PEOPLE v HILL

Docket No. 237014. Submitted June 10, 2003, at Detroit. Decided June 17, 2003, at 9:10 A.M.

Milton R. Hill was convicted by a jury trial in the Wayne Circuit Court, Thomas W. Brookover, J., of armed robbery, MCL 750.529; possession of explosive or combustible substances with intent to use unlawfully, MCL 750.210(2)(a); placing offensive or injurious substances in or near real or personal property, MCL 750.209(1)(b); and willfully and maliciously setting fire (preparation to burn), MCL 750.77(1)(d)(i), for his participation in the robbery of a gasoline station. During the robbery, the robbers sprayed gasoline around the interior of the station, and repeatedly flicked a lighter. Defendant appealed, raising issues of prosecutorial misconduct, ineffective assistance of counsel, insufficiency of the evidence, double jeopardy, improper jury instructions, and cumulative error.

The Court of Appeals *held*:

1. The prosecution and the police did not intimidate a witness and commit misconduct that deprived the defendant of a fair trial by announcing after trial had begun that one of the defendant's key defense witnesses was a suspect in the robbery and would be criminally investigated, which resulted in the witness's decision to invoke his Fifth Amendment right to remain silent. The defendant had previously identified the witness as being involved in the robbery, and the defendant should have been aware of the possibility that the witness would invoke the Fifth Amendment regardless of the announcement at trial. Furthermore, the defendant gave similar testimony on his own behalf, the substance of which was not challenged by the prosecution. There was no harm or prejudice to the defendant's defense from the witness's failure to testify.

2. The defendant was not denied the effective assistance of counsel when counsel, during the opening statement, referred to the witness who invoked his right to remain silent. Until trial began, there was no reason for counsel to believe that the witness would not testify. Similarly, the defendant was not denied the effective assistance of counsel when his counsel failed to object on hearsay grounds to the admission of a police report, because even if the admission of the report was erroneous, the error was harmless in

light of extensive testimony corroborating the information in the police report. Therefore, there was no reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

3. The prosecution must prove each and every element of a crime beyond a reasonable doubt. Here, the defendant's conviction under the preparation to burn statute, MCL 750.77(1)(d)(i), must be reversed because no evidence was submitted at trial showing that the gas station had a value of at least $20,000, which was a necessary element of the offense.

4. There was sufficient evidence to convict defendant on the offensive or injurious substance charge under MCL 750.209(1)(b), because the gasoline, as it was used during the armed robbery, qualified as an offensive or injurious substance or compound under the statute. The Legislature did not intend that cases involving gasoline be solely resolved under MCL 750.210, involving explosive or combustible substances or compounds, because subtle differences in each statute indicate an intent by the Legislature to punish similar yet separate acts.

5. The defendant's claim that his convictions of possession of explosive or combustible substances, MCL 750.210, and placing offensive or injurious substances, MCL 750.209, violated the double jeopardy clauses of the state and federal constitutions fails because the defendant's guilt under § 209 and § 210 does not arise out of the same acts or conduct. Under § 210, the defendant's guilt was established and a crime completed by the act of carrying or possessing the gasoline while entering the gas station with the requisite criminal intent. The separate and subsequent act of spraying the gasoline inside the station, causing damage to property, established a crime under § 209. There is no violation of double jeopardy protections if one crime is complete before the other takes place.

6. The trial court did not err in giving its instruction regarding reasonable doubt because the instruction was taken straight from the standard jury instruction, CJI2d 3.2, which has repeatedly been held to adequately convey the concept of reasonable doubt.

7. The defendant's argument that his convictions must be reversed on the basis of the cumulative errors committed by defense counsel is without merit because the only significant issue arising from trial pertains to the sufficiency of the evidence on the preparation to burn conviction, which conviction is reversed. The reversal does not affect the legal soundness of the remaining convictions.

Affirmed in part and reversed in part.

CRIMINAL LAW — PREPARATION TO BURN — ELEMENTS.
> The value of the property burned or intended to be burned is an essential element of the crime of preparation to burn and must be proved by the prosecution beyond a reasonable doubt to sustain a conviction (MCL 750.77[1][d][i]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Mary DuFour Morrow*, Assistant Prosecuting Attorney, for the people.

*Ashford & Associates, PC* (by *Linda D. Ashford*), for the defendant.

Before: GRIFFIN, P.J., and MURPHY and JANSEN, JJ.

MURPHY, J. Defendant appeals as of right his jury-trial convictions of armed robbery, MCL 750.529; possession of explosive or combustible substances with intent to use unlawfully, MCL 750.210(2)(a); placing offensive or injurious substances in or near real or personal property, MCL 750.209(1)(b); and willfully and maliciously setting fire (preparation to burn),[1] MCL 750.77(1)(d)(i).[2] Defendant was sentenced to four to fifteen years' imprisonment on the armed robbery conviction, two to fifteen years' imprisonment on the explosive or combustible substances conviction, two to fifteen years' imprisonment on the offen-

---

[1] Although the phrase "preparation to burn" is no longer contained in the heading to the text of the statute, we find it more accurately descriptive of defendant's conviction, where no fire was actually set. See Historical and Statutory Notes to MCL 750.77.

[2] The trial court dismissed, on the basis of insufficient evidence, an additional charge of possession of a short-barreled shotgun, MCL 750.224b, because the prosecutor presented no evidence regarding the exact length of the barrel.

sive or injurious substances conviction, and two to ten years' imprisonment on the "preparation to burn" conviction. We affirm in part and reverse in part.

## I. BASIC FACTS

This case arises out of an armed robbery of a Detroit-area Citgo gasoline station by two masked individuals, and possibly an accomplice waiting outside the station, during the early morning hours of April 15, 2000. The weapon used in the robbery was a sawed-off shotgun, which was pointed at the station clerk by one of the robbers, while the other robber sprayed gasoline from a small container over the bulletproof glass barrier that separated customers from station personnel. The robber spraying the gasoline also flicked a lighter during the robbery. The gas station clerk, frightened by the weapon and the implicit threat of arson, turned over cash to the robbers.

At trial, the jury heard testimony by numerous police officers, the gas station clerk, and defendant. The clerk testified that he was the only person working at the station when it was robbed at approximately 3:00 A.M. The clerk stated that he was terrified, despite the bulletproof glass, when he was confronted with the barrel of a shotgun and an accelerant being sprayed on the glass barrier. The two robbers demanded money, and the clerk handed over $70 to $100 in one-dollar bills by pushing the money through the small cash-tray opening in the glass barrier, which was partially filled with gasoline. The robbers left the gas station after they became nervous about a customer's vehicle pulling up outside the station. The clerk indicated that the customer ran away, leaving his car behind, after seeing that a robbery was taking

place. The clerk could not identify the robbers because of their masks, and he was unsure whether they left the station on foot or in a vehicle, or whether any other perpetrators were involved. He further testified that he never saw defendant in the station preceding the robbery as asserted by defendant in his testimony.

A responding police officer testified that he and his partner received radio communications regarding the armed robbery and about unidentified persons who got out of a vehicle after a police pursuit. The officer testified that he proceeded to the gas station and that upon arriving at the station, he smelled gasoline inside and found that an accelerant had been sprayed on the glass barrier and in the cash tray.

Another police officer testified that he was in the vicinity of the station when he received a call about a drag race, and on heading to the site of that matter, a brown Buick LeSabre raced by him at an excessive rate of speed. The officer turned his patrol car around and pursued the speeding vehicle, which had three occupants. The officer could not identify the occupants, aside from the driver being a black male, because the vehicle sped by his patrol car. The officer activated his lights and siren, but the Buick LeSabre did not slow and eventually it crashed into a cemetery gate and came to a stop. The cemetery was about a mile from the gas station. The officer did not see the occupants get out of the LeSabre, and when he reached the location where the vehicle was resting, the engine was still running, the driver's side door was jammed closed, the vehicle was empty, and a shotgun was sitting on the front seat.

Police officers searched the cemetery and found defendant on the opposite side of the cemetery from where the LeSabre crashed. Defendant was lying on his belly and crawling under some bushes when he was apprehended. He blurted out that he did not rob that place. It was not until after the LeSabre crashed in the cemetery that officers pursuing the vehicle became aware of the armed robbery.

According to the police, defendant subsequently told them that he and two occupants of the LeSabre, who he specifically named and identified as coworkers at Atlas Oil, got out of the vehicle and ran in separate directions. Defendant maintained to the police that his two cohorts ran out of the gas station and into defendant's vehicle. A police officer testified that defendant expressly stated "we did the robbery."

A police evidence technician took the stand to identify objects collected from the LeSabre after the crash. The technician had also collected a sample of gas from the inside of the Citgo station. The technician identified the following items found in the LeSabre: gasoline contained in a dishwashing liquid bottle, a sawed-off shotgun, shotgun ammunition, several one-dollar bills,[3] a mask, and a black wallet.

Defendant testified on his own behalf. He testified that on the date of the robbery, he was employed by Atlas Oil as a truck driver, which required him to make fuel deliveries to various locations. Defendant asserted that he would typically smell like gasoline after working a shift because of the nature of his job. On the night of the robbery, defendant claimed that

---

[3] There was testimony that the bills smelled of gasoline. There were no other one-dollar bills found in the vehicle. There was, however, $460 discovered in the LeSabre.

he finished his shift at work and drove to the Citgo station in his Buick LeSabre to pick up a snack. According to defendant, he entered the gas station carrying his keys and leaving his vehicle parked in the station parking lot. When he left the station after purchasing soda pop and chips, he noticed an unknown individual meandering around the LeSabre. Defendant claimed that he began to approach the individual standing near the LeSabre when he noticed that two other unknown individuals were sitting in the front seat of his vehicle. At this point, he became scared and turned to run; however, the individual standing outside defendant's vehicle forced defendant into the backseat of the vehicle at gunpoint. One of the individual's drove the LeSabre away, and during the drive, defendant maintained that he was forced at gunpoint to keep his head down by a gun-toting individual sitting in the backseat. The vehicle sped down the roadway and subsequently crashed into the gate at the cemetery and came to a stop, although defendant alleged that he did not see anything until he got out of the LeSabre after the crash. Defendant was unsure how the individuals started his vehicle because he had carried the keys inside the gas station and dropped them outside the station when he was first held at gunpoint.

After the crash, defendant got out of the LeSabre and crawled along the cemetery fence in an injured state. He testified that he did not know in which direction the other individuals ran. Defendant claimed that he crawled and hid under some bushes to avoid being found by his three alleged abductors. According to defendant, an officer then came upon him as he hid in the bushes and placed him under arrest after

first striking defendant in the back of the head. Defendant denied any involvement in the robbery, and he denied knowing anyone who was involved. Defendant asserted that he gave the police the names of a cousin and a coworker as being involved in the robbery after police threatened him with mace; however, defendant later denied that those individuals had anything to do with the crime. Defendant, looking at a picture of his LeSabre, acknowledged that the vehicle had a broken steering column, but he testified that it was not broken at the time he entered the gas station.[4]

On cross-examination, defendant stated that he was very familiar with the clerk who served him on the night of the robbery because defendant went into the store almost every other night, and they typically would joke around. This directly contradicted the clerk's testimony that he had not seen defendant in the store before the robbery. Defendant admitted that he parked in one of the furthest parking spots in the gas-station lot despite there being open, closer spots. Defendant also acknowledged that the shotgun found by police belonged to him and had been sitting under the LeSabre's backseat when defendant was abducted. He admitted sawing off part of the barrel of the gun just for the "heck" of it.

A rebuttal witness for the prosecution, a police officer who questioned defendant at the cemetery, testified that at the time defendant was apprehended,

---

[4] Defendant suggested to the jury that the broken steering column was evidence that the alleged abductors had somehow started the vehicle without defendant's keys. The evidence technician testified that the ignition appeared intact.

he stated that he had been abducted by two black males six hours earlier.

The jury returned the guilty verdicts as indicated above. Defendant appeals the convictions as of right.

### II. APPELLATE ARGUMENTS AND ANALYSIS

#### A. PROSECUTORIAL MISCONDUCT

Defendant first argues that the prosecutor committed misconduct when the police indicated at the time of trial that a prospective and important defense witness was now considered a potential suspect in the armed robbery, which resulted in the witness invoking his Fifth Amendment right to remain silent. Because the witness invoked his constitutional right, the trial court quashed a defense subpoena that would have required the witness's appearance at trial.[5] Defendant asserts that the witness would have testified that defendant was at work on the night of the alleged robbery, and that he smelled of fuel when he left work because his job involved delivering commercial fuel. Defendant accuses the prosecutor and the police of misconduct because for a period of fourteen months after the crime, the witness was not the focus of a criminal investigation, and the witness had been timely named in defendant's witness list. Defendant argues that the police and the prosecutor engaged in a ruse at the time of trial in order to intimidate the witness not to testify.

---

[5] An attorney was appointed by the court to represent the witness with respect to the subpoena and the issues of self-incrimination. Counsel advised the witness not to take the stand.

The trial court rejected defense counsel's requests for dismissal or for adjournment of the trial; however, the court was prepared to recess for an afternoon to permit defendant to find another witness. The record indicates that after a ten-minute recess to allow counsel and defendant to communicate on the matter, defendant decided to proceed with the trial.

The test for prosecutorial misconduct is whether, after examining the prosecutor's statements and actions in context, the defendant was denied a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). The Michigan Supreme Court and this Court have strongly condemned prosecutorial intimidation of witnesses. *People v Stacy*, 193 Mich App 19, 25; 484 NW2d 675 (1992). Attempts by the prosecution to intimidate witnesses from testifying, if successful, amount to a denial of a defendant's constitutional right to due process of law. *People v Canter*, 197 Mich App 550, 569-570; 496 NW2d 336 (1992). Threats from law-enforcement officers may be attributed to the prosecution. *Id.* at 570.

The record reflects that the trial court found that the witness's decision to invoke his Fifth Amendment rights was reasonable. The record is unclear with regard to the circumstances of the decision by the police to investigate the witness. It is clear, on the basis of the police testimony presented at trial, that the witness was specifically identified by defendant as being involved in the crime. However, it does not appear that the police followed up on that information at the time. Apparently, while waiting to testify at trial, the witness first learned that the police considered him a suspect in the armed robbery and would

be pursuing a criminal investigation against him.
There was no evidence taken to explain why the
police never pursued the witness as a suspect earlier
on. However, we note that it is not entirely clear that
the police were not treating the witness as a suspect
before defendant's trial date. The only details pro-
vided on the record were by the prosecutor, who
stated:

> [J]ust very briefly[,] there was no intent as counsel said,
> the proffer intent regarding—to testify, but I informed coun-
> sel of everything as things developed in the witness room
> as we discussed with the officers because I inquired why
> was there no follow-up on that person [whose] name was
> mentioned, and from that point on they did follow-up, and
> it has nothing to do with this trial, basically, it has to do
> with us possibly seeing a suspect of a crime who was in the
> building so we want to follow-up on it.

The prosecutor's statement does not provide much
clarity, and, at the least, there is an appearance of
possible impropriety. The *Stacy* panel stated that
"[w]here a testimonial record must be developed to
support a defendant's argument on the issue, remand
for an evidentiary hearing has been ordered." *Stacy,
supra* at 25. However, we do not find it necessary to
remand for an evidentiary hearing on the issue of pos-
sible police or prosecutorial misconduct. The witness
was named by defendant as being involved in the
crime; therefore, there was a legitimate basis to crimi-
nally investigate the witness. Additionally, defendant
necessarily had to have been aware of the possibility
that the witness would invoke the Fifth Amendment
regardless of what transpired at the courthouse, con-
sidering that defendant's statement to the police iden-
tifying the witness as a participant in the crime was

known.[6] To the extent, and on the assumption, that the police intentionally indicated an interest in investigating the witness solely in an effort to preclude him from testifying at defendant's trial, the exclusion of the witness's testimony did not deny defendant the right to a fair trial.

Defendant testified with respect to his job and his work with commercial fuel, which would explain why he smelled of gasoline when apprehended. According to defendant's testimony, he was abducted at gunpoint by three individuals, none of whom he knew, and driven away from the gas station in his own vehicle while he was seated in the backseat. Defendant did not deny that he was present at the gas station and at the cemetery. Trial counsel specifically indicated that the witness was not an alibi witness. The prosecutor charged that defendant was an active, willing participant in the crime, either as a principal or as an aider and abettor, and the prosecution never challenged the assertion that defendant worked with commercial fuel or that defendant had been at work before the crime. Taking into consideration defendant's theory of the case, we fail to see the harm or prejudice to his defense from the failure of the witness to testify. Defendant was not denied a fair trial.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel on three grounds.

---

[6] If the police had not indicated at the courthouse an intent to investigate the witness and the witness had taken the stand, we believe there is a possibility that the trial court, aware of the prior testimony implicating the witness, might have interjected sua sponte with self-incrimination concerns.

First, counsel was allegedly ineffective for promising in his opening statement that the witness, who subsequently invoked the Fifth Amendment, would testify on defendant's behalf. Defendant asserts that trial counsel should have confirmed the witness's availability before trial. Second, counsel was allegedly ineffective for failing to object on hearsay grounds to the introduction of a police report prepared by the evidence technician after the prosecutor argued that the document fit the business-records exception, MRE 803(6). Third, defendant alleges ineffective assistance of counsel with respect to the remaining issues presented on appeal.

In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles involved in a claim of ineffective assistance of counsel, stated:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defen-

> dant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Our review is limited to the record because defendant failed to request a *Ginther*[7] hearing. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997).

With respect to defendant's argument regarding counsel's opening statement and the witness who failed to testify, this Court will not assess counsel's competence with the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Defendant has already argued that not until after trial commenced did the police announce that the witness would be the subject of a criminal investigation, which resulted in the witness declining to testify per his constitutional right. Trial counsel subpoenaed the witness, the witness appeared, and the witness was at first prepared to testify. Therefore, it is difficult to argue that counsel should not have mentioned the witness during his opening statement. At that point in time, it appeared that the witness was going to testify. In hindsight, counsel should not have referred to the witness in his opening statement, but hindsight cannot form the grounds of a claim of ineffective assistance of counsel. To the extent that counsel should have been aware of the possibility that the witness would invoke the Fifth Amendment and further investigated the possibility, and thus should have refrained from saying anything in the opening state-

---

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

ment, it cannot be said, in light of our discussion regarding prosecutorial intimidation, that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Even assuming it was ineffective assistance of counsel, the error did not undermine confidence in the outcome.

With respect to the police evidence report, regardless of whether the report should have been excluded and whether counsel should have objected to the admission, reversal is not warranted. An erroneous admission of hearsay evidence can be rendered harmless error where corroborated by other competent testimony. *People v Van Tassel (On Remand)*, 197 Mich App 653, 655; 496 NW2d 388 (1992). Here, the evidence technician properly testified extensively with regard to the evidence found in defendant's vehicle, and the admission of her report was merely cumulative and did not place any relevant and damaging information before the jury that the jury did not know already. Therefore, there was not a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

With respect to defendant's claims of ineffective assistance related to the remaining issues, we shall address the claims below when discussing the substantive issues.

### C. SUFFICIENCY OF THE EVIDENCE

When determining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational

trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). This Court will not interfere with the role of the trier of fact of determining the weight of the evidence or the credibility of witnesses. *Id.* at 514-515.

Defendant challenges the sufficiency of the evidence in regards to his convictions for placing offensive or injurious substances in or near real or personal property, MCL 750.209(1)(b), and preparation to burn, MCL 750.77(1)(d)(i).

Defendant first argues that there was insufficient evidence to support the "preparation to burn" conviction under MCL 750.77(1)(d)(i) because there was no evidence showing that the gas station had a value of at least $20,000, and because there was insufficient evidence showing that defendant had the intent to willfully and maliciously set fire to the station.

MCL 750.77 provides in pertinent part:

> (1) A person who uses, arranges, places, devises, or distributes an inflammable, combustible, or explosive material, liquid, or substance or any device in or near a building or property . . . with intent to willfully and maliciously set fire to or burn the building or property or who aids, counsels, induces, persuades, or procures another to do so is guilty of a crime as follows:
>
> *          *          *
>
> (d) If any of the following apply, the person is guilty of a felony . . .
>
> (i) The property is personal or real property, or both, with a combined value of $20,000.00 or more.

We find that there was sufficient evidence of an intent to willfully and maliciously set fire to the gas station when reviewing the evidence in a light most favorable to the prosecution. The use of gasoline by spraying it on the glass barrier and surrounding property and the repeated flicking of a lighter, all done in the context of an armed robbery, evidenced an intent to willfully and maliciously set fire to the station had the clerk failed to comply. However, there was no evidence presented whatsoever concerning the value of the real and personal property that was the subject of the robbers' threatening actions. The prosecutor simply argues on appeal that it was a Citgo station; therefore, the value was clearly over $20,000. We would agree that in all likelihood such was the case, but our agreement would be mere speculation. At trial, the prosecutor told the jury that "[w]e didn't bring anybody to testify to you on this but it's up to you to decide whether the gas station or building is worth $20,000." The value of the threatened property was an element of the crime charged, yet there was no evidence of value or even a reference to value, which could have been established easily through testimony, real-estate or tax documents, or by stipulation. The prosecutor is required to prove each and every element of the crime beyond a reasonable doubt. *People v Eason*, 435 Mich 228, 233, 238; 458 NW2d 17 (1990); CJI2d 3.2. In the context of a larceny prosecution, this Court stated that "[t]he value of the item stolen, when used to differentiate between a felony and a misdemeanor offense, is an essential element of the charged crime." *People v Johnson*, 133 Mich App 150, 153; 348 NW2d 716 (1984). We find that the same principle is applicable here, where MCL 750.77(1) differ-

entiates between felonies and misdemeanors, and between different levels of felonies on the basis of the value of the property.

In *People v Schmidt*, 196 Mich App 104, 107; 492 NW2d 509 (1992), this Court reversed a conviction under MCL 257.622, the accident-report statute, which at the time required the report of an accident causing damage to property apparently amounting to at least $200. The *Schmidt* panel stated that "[t]he prosecutor had the burden of introducing some evidence of value, either the opinion of a qualified expert or the testimony of a person with knowledge, under the applicable rules of evidence." *Id.* This Court, noting that the case went to the jury with no record evidence of actual value, held that "[t]he court erred in submitting the case to the jury without proof that the damage to the vehicle was in an amount of at least $200 . . . ." *Id.* at 108.

Here, no proof of value was presented by the prosecutor; thus, the conviction under MCL 750.77(1)(d)(i) must be reversed.

We now address defendant's next argument regarding the sufficiency of the evidence. Defendant was convicted of the "offensive or injurious substance" charge pursuant to MCL 750.209(1)(b), which provides:

> (1) A person who places an offensive or injurious substance or compound in or near to any real or personal property with intent to wrongfully injure or coerce another person or to injure the property or business of another person, or to interfere with another person's use, management, conduct, or control of his or her business or property is guilty of a crime as follows:

*   *   *

(b) If the violation damages the property of another person, the person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $15,000.00, or both.

Defendant maintains that gasoline does not constitute "an offensive or injurious substance or compound" for purposes of subsection 209(1)(b). Defendant argues that gasoline is properly categorized solely as "an explosive or combustible substance," which language is contained in MCL 750.210—another statute under which defendant was convicted.

We first note that defendant's argument is not a true sufficiency claim, rather it chiefly entails an issue of statutory construction that was not argued below. Therefore, we review this issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Statutory construction concerns an issue of law that this Court reviews de novo. *In re RFF*, 242 Mich App 188, 198; 617 NW2d 745 (2000).

Our Supreme Court in *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002), noted the guiding principles of statutory construction, stating:

An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature. To do so, we begin with an examination of the language of the statute. If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legisla-

ture as derived from the words of the statute itself. [Citations omitted.]

The terms "offensive" and "injurious" are not defined in the statute or in Chapter XXXIII of the Michigan Penal Code (Explosives, Bombs, and Harmful Devices) in which § 209 is found. Moreover, there is no case law interpreting § 209 since the statute was amended in 1998. 1998 PA 208.[8] Because there are no statutory definitions of the terms, this Court is required to give the terms their plain and ordinary meaning. *Stanton v Battle Creek*, 466 Mich 611, 617; 647 NW2d 508 (2002). Consulting a dictionary is appropriate when determining the common, ordinary meaning of a word or phrase. *Id.* The *Random House Webster's College Dictionary* (2001) defines "offensive" as "causing resentful displeasure; highly irritating or annoying[;] unpleasant or disagreeable to the sense; disgusting."[9] "Injurious" is defined as "harmful, hurtful, or detrimental, as in effect[.]" *Id.*

In and of itself, and when properly used, gasoline is not offensive or injurious as those terms are defined above. Generally speaking, gasoline is not highly unpleasant and disagreeable to the senses, rather it is a substance or compound that is used by people

---

[8] Section 209 was amended in 1998, yet the previous version of the statute also included the terms "offensive" and "injurious." See Historical and Statutory Notes to MCL 750.209. The case law referencing the statute is old and sparse, and the cases did not involve interpretation of the terms "offensive" or "injurious." *People v Orlando*, 305 Mich 686; 9 NW2d 893 (1943); *People v Harwood*, 286 Mich 96; 281 NW 551 (1938). We do note that the substance involved in *Orlando, supra* at 688, was a "stench bomb," and in *Harwood, supra* at 97, the substance was not expressly identified and was simply referred to as a foul and offensive substance.

[9] Gasoline is defined as "a volatile, flammable liquid mixture of hydrocarbons obtained from petroleum and used chiefly as fuel for internal-combustion engines." *Random House Webster's College Dictionary* (2001).

every day in this country to power motor vehicles and other gasoline-driven devices and equipment. Additionally, gasoline is not harmful, hurtful, or detrimental when used properly. Rather, gasoline, in effect, is a beneficial source of energy.

However, there is no doubt that gasoline can be used in such a manner as to be an offensive and injurious substance or compound, especially when considered in relation to being placed in or near real or personal property, MCL 750.209(1). Gasoline by its very nature is extremely dangerous, and when used improperly and with criminal intent, can wreak great devastation. Here, the gasoline was clearly used as an offensive and injurious substance when it was sprayed inside a retail establishment.

Although gasoline is an offensive and injurious substance or compound in the context of this case, the more difficult issue is whether the Legislature intended § 209 to be applicable in cases involving gasoline in light of the language contained in § 210. MCL 750.210 provides, in relevant part:

> (1) A person shall not carry or possess an explosive or combustible substance or a substance or compound that when combined with another substance or compound will become explosive or combustible or an article containing an explosive or combustible substance or a substance or compound that when combined with another substance or compound will become explosive or combustible, with the intent to frighten, terrorize, intimidate, threaten, harass, injure, or kill any person, or with the intent to damage or destroy any real or personal property without the permission of the property owner or, if the property is public property, without the permission of the governmental agency having authority over that property.
> (2) A person who violates this subsection is guilty of a crime as follows:

(a) Except as provided in subdivisions (b) to (e), the person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

There is no question that gasoline is a combustible substance,[10] and that there was sufficient evidence to support defendant's conviction under § 210. However, we are confronted with the question whether the Legislature intended § 209 to be operable where the offensive or injurious substance or compound is also an explosive or combustible substance. This question also necessarily raises issues concerning double jeopardy. In the case sub judice, gasoline qualifies under the substance and compound provisions of both § 209 and § 210.

The penalty provisions of the two statutes are identical, except that subsection 209(2) contains an additional provision, which provides that "[a] person who places an offensive or injurious substance or compound in or near to any real or personal property with the intent to annoy or alarm any person is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $3,000.00, or both."

The focus of § 209 is on the "placement" of the offensive or injurious substance or compound in or near real or personal property with the criminal intent to harm or coerce a person or to injure property or harm a business. The focus of § 210 is on "carrying" or "possessing" the explosive or combustible substance or compound with the criminal intent to

---

[10] Combustible is defined as "capable of catching fire and burning; inflammable; flammable." *Id.*

harm or terrorize a person or damage property.[11] It is beyond dispute that one cannot "place" a substance without either "carrying" or "possessing" the substance. Therefore, defendant's placement of the gasoline on the barrier in the gas station necessarily implicated the "carry or possess" provision of § 210. The converse of this logic is not always true, in that one could carry or possess a substance under § 210 without placing the substance under § 209.

In light of the above reasoning, and because an explosive or combustible substance would necessarily constitute an injurious substance when the substance is used improperly, it would appear at first glance that any criminal liability arising out of the illegal use of gasoline under § 209 would likewise give rise to the criminal liability under § 210, thereby giving some credence to defendant's position that gasoline was intended to be solely covered under § 210. However, there are fine distinctions that make such a conclusion unsound. Gasoline could be used in an illegal manner under § 209 where the intent is to interfere with another person's business or to annoy or alarm another person, as is arguably the case here, yet no similar intent provisions are found in § 210.[12] Therefore, we cannot say that the Legislature did not

---

[11] Both statutes were amended in the same legislative action in 1998, and those amendments reflect the current versions of the statutes. 1998 PA 208. The legislative analysis indicates that the Legislature's concern at the time was to update outdated and insufficient statutes concerning explosives, bombs, and other harmful substances and compounds in light of a case regarding a bomb-carrying family from Battle Creek, the Oklahoma City and World Trade Center bombings, and the fear of domestic terrorism. Senate Legislative Analysis, SB 97, August 24, 1998.

[12] For this very reason we additionally reject defendant's argument that because § 210 contained the terms "offensive" and "injurious" before the 1998 amendment, those terms, as used in § 209, do not cover gasoline.

intend gasoline to be a substance that could give rise to criminal liability under § 209, and thus there was no plain error.[13] We address defendant's double jeopardy arguments next.

### D. DOUBLE JEOPARDY

Defendant argues that his convictions of possession of explosive or combustible substances, MCL 750.210(2)(a), and placing offensive or injurious substances, MCL 750.209(1)(b), violated the double jeopardy clauses of the state and federal constitutions. Additionally, defendant raises a double jeopardy argument regarding his convictions of preparation to burn, MCL 750.77(1)(d)(i), and § 209. In light of our ruling that there was insufficient evidence to support a conviction under MCL 750.77(1)(d)(i), we need not address the double jeopardy argument with respect to that statute, and our attention is focused solely on any double jeopardy implications arising out of defendant's convictions under §§ 209 and 210.

Defendant did not present a double jeopardy argument to the trial court; however, a double jeopardy issue involves a significant constitutional matter that will be considered on appeal regardless of whether the defendant raised it before the trial court. *People v Colon*, 250 Mich App 59, 62; 644 NW2d 790 (2002).[14] A double jeopardy argument presents a question of con-

---

[13] Because gasoline can be considered an offensive or injurious substance under § 209, counsel was not ineffective for failing to preserve a challenge on a meritless position. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

[14] This negates any claim of ineffective assistance of counsel predicated on lack of preservation.

stitutional law that this Court reviews de novo. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001).

In *Colon, supra* at 62, this Court, addressing a double jeopardy issue, stated:

> The United States and the Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15. In other words, the Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *People v Squires*, 240 Mich App 454, 456; 613 NW2d 361 (2000).

Our Supreme Court in *People v Denio*, 454 Mich 691, 706; 564 NW2d 13 (1997), stated that the intent of the Legislature is the governing factor under the double jeopardy clause of the United States and Michigan constitutions. In *Denio, supra* at 709, the Court further stated:

> Thus, if the Legislature desires, it may specifically authorize penalties for what would otherwise be the "same offense." *People v Sturgis*, 427 Mich 392, 403; 397 NW2d 783 (1986). "[C]umulative punishment of the same conduct under two different statutes in a single trial does not run afoul of the Double Jeopardy Clause in either the federal or state system." *Id.*

Here, it is unnecessary to determine if our Legislature intended multiple punishments because defendant's guilt under MCL 750.209 and MCL 750.210 does not arise out of the same acts or conduct, which is required for a successful double jeopardy claim. Under the provisions of § 210 pursuant to which defendant was charged and convicted, defendant's guilt was established and a crime completed by the

act of carrying or possessing the gasoline while entering the gas station with the requisite criminal intent, before the gasoline was actually sprayed, or placed, in or near real or personal property. MCL 750.210(1) and (2)(a). Nothing more needed to be proven. The separate, distinct, and subsequent act of spraying or placing the gasoline inside the gas station, causing damage to property, established a crime under § 209. MCL 750.209(1)(b). This Court in *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995), ruled that "[t]here is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other." Therefore, there is no double jeopardy violation and reversal is not warranted.

### E. JURY INSTRUCTIONS

Defendant next argues that the trial court erred with respect to the jury instruction regarding reasonable doubt. The trial court instructed:

> A reasonable doubt is a fair honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary doubt or possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that, a doubt that is reasonable after a careful and considerate examination of the facts and circumstances of this case.

Defendant argues that "[t]he court did not instruct that a reasonable doubt is one which would cause a person of ordinary prudence to hesitate to act in the more important affairs of life." There was no objection to the court's instruction; therefore, we review

this issue for plain error affecting defendant's substantial rights. *Carines, supra* at 763-764.

There was no error here. The trial court's instruction on reasonable doubt was taken almost verbatim from CJI2d 3.2. This standard jury instruction has repeatedly been held to adequately convey the concepts of reasonable doubt, the presumption of innocence, and the burden of proof. *People v Cooper*, 236 Mich App 643, 656; 601 NW2d 409 (1999); *People v Hubbard (After Remand)*, 217 Mich App 459, 487-488; 552 NW2d 493 (1996); *People v Reese*, 126 Mich App 132, 137; 337 NW2d 7 (1983). Thus, reversal is not warranted.[15]

### F. CUMULATIVE ERROR

Defendant finally argues that cumulative error, as demonstrated by the numerous appellate arguments raised by defendant, requires reversal. This Court review a cumulative-error argument to determine if the combination of alleged errors denied the defendant a fair trial. *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). The cumulative effect of several minor errors may warrant reversal even where the individual errors in the case would not warrant reversal. *Cooper, supra* at 659-660.

Here, reversal is not warranted on the theory of cumulative error because the only significant and relevant problem arising from the trial pertains to the sufficiency of the evidence on the "preparation to burn" conviction, which we reverse. This does not

---

[15] Trial counsel's failure to object does not support a claim of ineffective assistance of counsel because any objection would have been futile. *Darden, supra* at 605.

affect the legal soundness of the remaining convictions.

### III. CONCLUSION

Defendant's claims of prosecutorial misconduct, ineffective assistance of counsel, inapplicability of MCL 750.209, double jeopardy, improper jury instructions, and cumulative error are all rejected and do not warrant reversal, with the exception that we reverse the conviction under MCL 750.77 because there was insufficient evidence to support the conviction.

Affirmed in part and reversed in part.