**C O U R T   O F   A P P E A L S**

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BYRON RICHARD ROOT,

        Defendant-Appellant.

UNPUBLISHED
February 19, 2015

No. 318826
Ingham Circuit Court
LC No. 12-001167-FC

Before: MURPHY, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of carjacking, MCL 750.529a, armed robbery, MCL 750.529, fleeing and eluding police, MCL 257.602a(3)(b), resisting and obstructing officers, MCL 750.81d(1), and operating a motor vehicle while intoxicated, MCL 257.625(1). He was sentenced as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 420 to 700 months for the carjacking and armed robbery convictions, 58 to 240 months for the fleeing and eluding conviction, 46 to 180 months for the resisting and obstructing conviction, and to 93 days in jail for the drunk driving conviction. After evaluation of defendant's appellate arguments, and for the reasons set forth below, we affirm defendant's convictions and sentences, but remand for the ministerial task of correcting the presentence investigation report (PSIR).

This case arises out of an attack on a woman who had been visiting her mother's grave in a Lansing-area cemetery. Her assailant approached her from behind and struck her several times in the head, knocking her to the ground. The perpetrator took the victim's car keys and cell phone, threatening to kill her if she looked up and claiming that he had a gun. The assailant then ran to and entered the victim's car and drove it away. Police spotted the stolen vehicle shortly after the attack, activated their overhead lights in an attempt to pull the car over, and then pursued the vehicle through a residential area after the driver refused to stop. The fleeing driver ran a stop sign, drove in excess of 60 miles per hour at times, and eventually crashed the car in a wooded area. The driver of the vehicle, later identified as defendant, proceeded to run from the crash scene. Police officers pursued defendant on foot and eventually caught up to him when he fell. Defendant was not compliant with the officers' commands, and they had to employ force to subdue and arrest him. At the time of the arrest, defendant had the victim's cell phone.

On appeal, defendant argues that the trial court erred by denying his motion for a directed verdict, where there was a lack of evidence establishing defendant's identity as the perpetrator,

-1-

and where, as to the carjacking charge, there was a lack of evidence showing that the taking of the vehicle from the victim occurred in the victim's presence. We reject both arguments.

"In assessing a motion for a directed verdict of acquittal, a trial court must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Riley (After Remand)*, 468 Mich 135, 139-140; 659 NW2d 611 (2003). A decision on a motion for directed verdict is reviewed under the same principles applicable to reviewing a challenge to the sufficiency of the evidence. *People v Aldrich*, 246 Mich App 101, 122-123; 631 NW2d 67 (2001). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime, including identity. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded to the inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

With respect to the identity issue, it is well-accepted that identity is an element of every offense. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Although the victim was unable to identify her assailant and there was perhaps an inconsistency regarding the description of his outerwear, the victim accurately identified defendant's height, weight, skin color, build, and age. Moreover, and importantly, a reasonable inference arising out of the evidence was that defendant, and no one else, committed the crime, considering that he was caught driving the stolen car and possessing the stolen cell phone soon after the offense was committed after having attempted to flee police. The jury was free to discredit defendant's testimony that someone with the street name "PM" begged defendant to take and deliver the car to an acquaintance for $20.

With respect to the offense of carjacking, MCL 750.529a provides, in pertinent part, as follows:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the

-2-

commission of the larceny, or in an attempt to retain possession of the motor vehicle.

Here, there was more than sufficient evidence showing that defendant, in the course of committing a larceny of the victim's car, used force and violence, along with threats of force and violence. Defendant obtained the car keys through force and violence, which allowed him to access and operate the vehicle. Defendant's argument that there was a lack of evidence showing that the assault was committed in close proximity to the car, i.e., that the vehicle was taken by defendant from the victim while in the victim's presence, is entirely meritless, as the argument relies on a prior version of the carjacking statute, MCL 750.529a. Prior to the enactment of 2004 PA 128, effective July 1, 2004, which was long before the events that formed the basis of this prosecution occurred, MCL 750.529a provided that carjacking entailed taking "a motor vehicle . . . from another person, *in the presence of that person*." 1994 PA 191; see Statutory and Historical Notes (emphasis added). The caselaw that defendant relies upon construed the version of the statute prior to the 2004 amendment. See, e.g., *People v Davenport*, 230 Mich App 577, 579; 583 NW2d 919 (1998). There no longer exists an "in the presence of" element. Accordingly, defendant's argument fails. Moreover, the victim testified to observing defendant take and drive off with her car as she lay on the ground, which would satisfy any assumed "presence" requirement. Reversal is unwarranted.

Defendant, who testified on his own behalf, next contends that he was denied his right to a fair trial due to a series of questions posed to him directly by the trial court that sought an explanation regarding an injury to his hand, which questioning suggested the possibility that his hand was injured when striking the victim in the head. Because the issue was unpreserved, our review is under plain-error analysis, which our Supreme Court explained in *Carines*, 460 Mich at 763:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence. [Citations, internal quotation marks, and alteration bracket omitted.]

In *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013), this Court discussed the principles associated with a trial judge engaging in examination of a witness:

> Under MRE 614(b), "[t]he court may interrogate witnesses, whether called by itself or by a party." But the trial court's examination of witnesses may not "pierce the veil of judicial impartiality," because a defendant in a criminal trial has a right to a neutral and detached judge. On review of the challenged inquiries

-3-

made by the trial court, it is evident that the court was permissibly "question[ing] witnesses in order to clarify testimony or elicit additional relevant information." [Citations omitted.]

Here, there had been some brief testimony about an injury to defendant's wrist and hand, including from defendant himself,[1] and the trial court proceeded to ask questions on the subject in an apparent effort to clarify how defendant's hand came to be injured and to elicit additional pertinent information. In the framing of the trial court's questions, there was a suggestion that perhaps defendant's hand was injured in striking the victim's head and that the hand injury was consistent with striking someone in the head. Defendant denied striking the victim or even being present at the scene, and defendant pointed out to the trial court that the injury to his right hand was on "the top of [his] hand," at which point the court immediately terminated questioning.

If it did not pierce the veil of judicial impartiality, the trial court came awfully close to doing so, and we do not condone some aspects of the questioning, although we do not believe that it was inappropriate for the court to generally elicit testimony from defendant to obtain an explanation of how defendant injured his hand. Assuming an error, we question whether the court's examination of defendant amounted to "plain" error. However, even if we presume that some of the trial court's questions constituted plain error by piercing the veil of judicial impartiality, we cannot conclude that defendant has established the requisite prejudice. While the victim could not identify her assailant, the circumstantial evidence of defendant's involvement in the crime was, in our view, overwhelming; he was caught red-handed with the stolen car and cell phone shortly after the commission of the crime, and he tried to elude police. And we also note that defendant appeared to have successfully rebutted the suggestion that he struck the victim with his right hand by noting that his injuries were on the top of his hand. Additionally, defendant explained that his injury occurred in the process of being handcuffed by police. Defendant has not met his burden of showing that the outcome of the proceedings would have been different but for the trial court's examination. Finally, defendant has not shown, assuming plain error, that he was actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence. Reversal is unwarranted.

Next, in a brief filed pursuant to Administrative Order No. 2004-6, Standard 4, defendant asserts myriad unpreserved claims of prosecutorial misconduct during closing arguments. After carefully scrutinizing each one of defendant's claims, we conclude that he has not established plain error. The prosecutor's arguments were supported by the evidence and/or reasonable inferences arising from the evidence, he was not confined to using the blandest of all terms, he permissibly argued, on the basis of the evidence, that defendant lacked credibility and was not worthy of belief, he did not personally vouch for the credibility of any witness, and, finally, the prosecutor did not improperly refer to his own beliefs and opinions. *People v Dobek*, 274 Mich App 58, 63-68; 732 NW2d 546 (2007). And assuming that the prosecutor improperly appealed to the jury to sympathize with the victim, it was insufficient to establish the required prejudice.

---

[1] Defendant testified, absent any elaboration at that point, that "something happened to my hand."

*Carines*, 460 Mich at 763. We also reject defendant's associated argument that the trial court's reasonable doubt instruction, which was endorsed by the prosecutor, was improper. The instruction was consistent with M Crim JI 3.2, which has been determined to be legally sound. *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003).

In another Standard 4 argument, which was also unpreserved, defendant contends that he was denied his right to a fair trial because the prosecution failed to investigate and analyze physical evidence. Defendant argues that the police should have checked his phone for PM's number and taken fingerprints from the victim's car and cell phone.

For the following reasons set forth in this Court's opinion in *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003), defendant's claims lack merit and do not warrant reversal:

> Absent a showing of suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to test evidence to accord a defendant due process. Nor does due process require that the prosecution seek and find exculpatory evidence. Although the prosecution bears the burden of proving guilt beyond a reasonable doubt in a criminal trial, it need not negate every theory consistent with defendant's innocence, nor exhaust all scientific means at its disposal. As our Supreme Court noted, neither the prosecution nor the defense has an affirmative duty to search for evidence to aid in the other's case. In sum, defendant cites no authority, and we are aware of none, that would have required the prosecutor, on the basis of the facts in this case, to complete . . . testing . . . . [Citations omitted.]

Under the circumstances of this case, the police were not required to take the investigative and analytical steps argued by defendant in this appeal. Defendant does not show that evidence was suppressed, that there was any misconduct, or that the police or prosecutor acted in bad faith.

Finally, defendant argues that the trial court improperly scored offense variable (OV) 3, MCL 777.33, and OV 4, MCL 777.34, at 10 points apiece with respect to the offense of resisting and obstructing an officer. However, as argued by the prosecutor, OV 3 and 4 were both adjusted by the trial court to zero points during sentencing as agreed upon by the parties. But we do note that the PSIR was not amended to reflect this change. Accordingly, we remand for the ministerial task of correcting the PSIR.

Affirmed, but remanded for the ministerial task of correcting the PSIR consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Deborah A. Servitto