*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HENRY EARL LOWE,

        Defendant-Appellant.

UNPUBLISHED
April 18, 2019

No. 342841
Genesee Circuit Court
LC No. 17-041369-FH

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of domestic violence, MCL 750.81(2), felonious assault, MCL 750.82, interfering with electronic communications, MCL 750.540, felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, but acquitted defendant of unlawful imprisonment and a fourth felony-firearm charge. Defendant's convictions arise from his ex-wife's allegation of domestic abuse. Contrary to defendant's appellate challenges, the prosecutor did not intimidate the victim into testifying against him. Moreover, defendant was not entitled to a self-defense instruction. However, the trial court improperly scored defendant's offense variables (OVs), impacting the sentences imposed. We affirm defendant's convictions but vacate his sentences and remand for resentencing.

## I. BACKGROUND

On March 24, 2017, Andrea Lowe contacted 911, reporting that defendant, her ex-husband, had physically assaulted her. Lowe had been living with defendant for a couple of weeks when defendant arrived home intoxicated and "belligerent." Defendant started an argument with Lowe and slapped her across the face. She grabbed a butcher knife from the kitchen to protect herself. It is unclear whether Lowe voluntarily ran to the basement to hide or whether defendant chased her there, but defendant blocked her exit. Lowe told the 911 operator that she heard defendant racking a shotgun. Defendant then burst into the basement carrying the weapon. The pair wrestled for the phone and defendant won. Lowe escaped and ran out of the

-1-

house and down the street. When the police arrived on the scene, defendant appeared to be intoxicated and was "standing in the middle of the street screaming and yelling obscenities." Lowe was "crying and very, very upset." She told the officers that defendant hit her twice and threatened to kill her while pointing a shotgun at her.

## II. WITNESS INTIMIDATION

Before trial, Lowe decided not to testify against defendant. She avoided the prosecutor's attempts at contact, but called defense counsel and indicated "that she did not want to go forward and that she was not going to subject herself to committing perjury under oath and that she was not coming to court." The court determined that the prosecutor had not engaged in due diligence to secure Lowe's testimony and denied his pretrial request to present Lowe's preliminary examination testimony at trial.

At the close of the prosecutor's case-in-chief at trial, Lowe appeared in court and stated her intent to testify for the defense. Given her surprise appearance and change of story, the prosecutor asked the court if he could question Lowe outside the jury's presence to ensure "that she understands the perjury charges" and "contempt charges." The court agreed and the following was placed on the record:

> *Q.* Ms. Lowe, do you have the contact number—well first, let me just start with this. You understand that by the Judge swearing you in you're required to tell the truth?
>
> *A.* Yes.
>
> *Q.* And you understand that if you provide an answer that is untruthful and the Judge determines that you have provided untruthful testimony or you have potentially evaded a court order or anything of those lines, that could be a contempt order? Do you understand that?
>
> *A.* Yes.
>
> *Q.* And the Judge . . . can issue a contempt order based on your testimony?
>
> *A.* Yes.
>
> *Q.* Okay. And is it your testimony today right now under oath that everything you're going to testify to is the truth, the whole truth, and nothing but the truth?
>
> *A.* Yes.

Defendant contends that during this exchange, the prosecutor falsely informed Lowe that she faced perjury and contempt charges and thereby intimidated the witness. Defendant failed to preserve this issue by raising it below and our review is limited to plain error affecting defendant's substantial rights. *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001).

In general, "[t]he test for prosecutorial misconduct is whether, after examining the prosecutor's statements and actions in context, the defendant was denied a fair and impartial trial." *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003). Michigan courts "strongly condemn[] prosecutorial intimidation of witnesses." *Id*. "Attempts by the prosecution to intimidate witnesses from testifying, if successful, amount to a denial of a defendant's constitutional right to due process of law." *Id*. While a prosecutor cannot intimidate a witness, "a prosecutor may inform a witness that false testimony could result in a perjury charge." *People v Layher*, 238 Mich App 573, 587; 607 NW2d 91 (1999). That is all the prosecutor did in this case.

The prosecutor's questions were limited to ensuring that Lowe understood the consequences of lying under oath. The veracity of Lowe's testimony was of concern given the strange turn of events where Lowe recanted her prior story and then appeared in court as a surprise defense witness. The prosecutor's concerns about perjury were well founded because defense counsel expressly indicated that Lowe was avoiding testifying at trial because she feared committing perjury. Absent any hint of witness intimidation, defendant is not entitled to relief.

## III. OFFENSE VARIABLE SCORING

Defendant also challenges the trial court's assessment of 10 points for OV 4 (psychological injury to the victim) and 25 points for OV 20 (act of terrorism). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016).

"OV 4 is correctly scored at 10 points when a 'serious psychological injury requiring professional treatment occurred to a victim.'" *People v White*, 501 Mich 160, 163; 905 NW2d 228 (2017), quoting MCL 777.34(1)(a). The *White* Court held "that (a) points for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim and (b) evidence of fear while a crime is being committed, *by itself*, is insufficient to assess points for OV 4." *White*, 501 Mich at 162.

> While crime victims are often obviously, and understandably, frightened when a crime is being perpetrated, this fear does not necessarily result in a 'serious psychological injury' and, . . . a court cannot merely assume that a victim has suffered a 'serious psychological injury' solely because of the characteristics of the crime. [*Id*. at 164-165.]

The prosecutor argued that the trial court should assess 10 points for OV 4, in part, because Lowe testified at the preliminary examination that she was afraid when defendant pointed a shotgun at her, and Lowe was upset after escaping defendant's home. The trial court did not explain why it assessed 10 points, merely noting that this was an unusual case because the victim testified as a defense witness. However, our "review of the trial court's scoring of OV 4 is not limited to the reasoning provided by the trial court." *Id*. at 164.

Although Lowe was fearful during the offense and was "crying and very, very upset" immediately after, there is no record indication that she suffered any lasting psychological harm that could have warranted professional assistance. Rather, Lowe informed the court in a pretrial telephone call that the offense was "not that serious" and she thought the prosecution was unfair. When asked by the prosecutor why she came to trial to testify, Lowe stated:

> I'm here because I want to get this over with so I can go on with my life. I'm tired. I have a lot going on like I said. I just found out my grandmother is dying from cancer. I don't have time for this.

Absent any indication from the victim that she felt any lasting trauma, there was no ground to assess any points for OV 4.

The court also improperly assessed 25 points for OV 20 based on defendant's statement to police during his arrest—"I hope them terrorist [sic] kill every one of you bitches, you next, I'm gonna see to it."

MCL 777.49a provides for the assessment of points for "terrorism" as follows:

> (a) The offender committed an act of terrorism by using or threatening to use a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device…….100 points

> (b) The offender committed an act of terrorism without using or threatening to use a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device…….50 points

> (c) The offender supported an act of terrorism, a terrorist, or a terrorist organization…….25 points

> (d) The offender did not commit an act of terrorism or support an act of terrorism, a terrorist, or a terrorist organization…….0 points

The definition of an "act of terrorism" is taken from MCL 750.543b. MCL 777.49a(2)(a). MCL 750.543b(a) provides:

"Act of terrorism" means a willful and deliberate act that is all of the following:

> (i) An act that would be a violent felony under the laws of this state, whether or not committed in this state.

> (ii) An act that the person knows or has reason to know is dangerous to human life.

-4-

(iii) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

In *People v Osantowski*, 481 Mich 103; 748 NW2d 799 (2008), the Supreme Court considered what it means to commit or support an act of terrorism "by using or threatening to use" a listed device. "[T]he use or threatened use must constitute the *means* by which the offender committed an act of terrorism." *Id*. at 109. "Under MCL 750.543b, a threat *may* constitute an act of terrorism" if the threat itself is "a violent felony" as contemplated by the statute. *Osantowski*, 481 Mich at 109. MCL 750.543b(h) defines a "violent felony" as "a felony in which an element is the use, attempted use, or threatened use of physical force against an individual, or the use, attempted use, or threatened use of" various devices.

Defendant did not threaten to use any device listed in MCL 777.49a or MCL 750.543b. He did not threaten to commit a violent felony against anyone. Rather, defendant expressed his wish that unidentified terrorists would kill the officers. This was not an act, let alone an act of terrorism. Accordingly, the trial court should not have assessed 25 points for OV 20.

Defendant's total Prior Record Variable (PRV) score of 60 placed him in PRV Level E. His original total OV score of 80 points placed him in OV Level VI. The subtraction of 35 points reduces defendant's total OV score to 45 and his OV Level to IV. Defendant was sentenced as a fourth habitual offender for his Class E offense of being a felon in possession of a firearm. His original minimum guidelines range was 22 to 76 months. After correcting his OV score, defendant's minimum sentencing guidelines range is only 14 to 58 months. Given the errors committed in scoring defendant's sentencing guidelines and the impact of these errors on the appropriate minimum guidelines range, we must vacate defendant's sentences and remand for resentencing. See *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006).

## IV. SELF-DEFENSE JURY INSTRUCTION

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant contends that the trial court improperly denied his request for a jury instruction regarding self-defense. He also contends that his appellate counsel was ineffective for failing to raise this challenge.

We review for an abuse of discretion a trial court's determination whether a particular jury instruction is applicable and review de novo any underlying issues of law. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). Criminal defendants are "entitled to have a properly instructed jury consider the evidence against" them. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). To fulfill this entitlement, a court must give a requested "jury instruction on a theory or defense" if it is supported by the evidence. *Id*.

A defendant may claim self-defense, even to claims of being a felon in possession of a firearm, "as long as the defense is supported by the evidence." *Dupree*, 486 Mich at 712. To raise a self-defense claim, the defendant must not have been engaged in the commission of the

-5-

crime at the time he used force against another and must "honestly and reasonably believe[]" that the use of force is necessary to avoid "imminent death" or "imminent great bodily harm." MCL 780.972; *People v Guajardo*, 300 Mich App 26, 40; 832 NW2d 409 (2013). A person who initiates aggression or escalates the level of aggression in a situation is not entitled to claim self-defense. See *People v Reese*, 491 Mich 127; 815 NW2d 85 (2012); *Riddle*, 467 Mich 116.

Defendant asserts that he was entitled to a self-defense instruction because Lowe was carrying a butcher knife. Defendant also points to the testimony of Keith Biggs that Lowe was intoxicated on the day in question and shortly before the charged offense, she acted violently toward defendant and slapped his face. What happened earlier in the day, however, is not relevant to whether defendant feared for his safety when he slapped Lowe, grabbed his shotgun, and cornered her in the basement. Moreover, the evidence supports that defendant was the initial aggressor during the current incident. Lowe testified that defendant came home intoxicated and started an argument with her. Defendant slapped Lowe and only then did she take a butcher knife from the kitchen. Defendant escalated the situation by retrieving his shotgun and confronting Lowe in the basement while she was on the phone with a 911 operator. There was no evidence that Lowe ever threatened defendant with the butcher knife, even in self-defense.

There also is no record evidence that defendant honestly and reasonably believed he was in danger of attack by Lowe. Lowe was alone in the basement calling 911 when defendant approached her with a shotgun in hand. Defendant could not have reasonably believed that Lowe posed an imminent threat of harm when he followed Lowe into the basement.

Defendant also cannot establish that his appellate counsel's omission of this challenge rendered his performance defective. "Appellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *People v Uphaus*, 278 Mich App 174, 186-187; 748 NW2d 899 (2008). Defendant's challenge to the rejection of his request for a self-defense jury instruction was weak; indeed, it is without merit. Accordingly, appellate counsel cannot be faulted for deciding not to raise it.

We affirm defendant's convictions, vacate his sentences, and remand for resentencing. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher