*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRANDON LEE KENDALL,

        Defendant-Appellant.

UNPUBLISHED
February 26, 2019

No. 337542
St. Clair Circuit Court
LC No. 16-002006-FH

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant, Brandon Lee Kendall, appeals as of right his jury trial convictions of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to 35 days' incarceration for the felonious assault conviction, with credit for 35 days served, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. BASIC FACTS

Defendant's convictions arose from an incident of road rage, during which the complainant claimed that defendant pulled a gun on him. Defendant testified that on the day of the incident, there was "[l]ots of snow" and the road conditions during the morning commute were "slippery" and "slushy." The complainant, who was driving a PT Cruiser with his two-year-old son in the car, was traveling in the right-hand lane on 10th Street in Port Huron. At the same time, defendant was driving a Ford Bronco in the left-hand lane of 10th Street. Defendant, who had a valid concealed pistol license, was carrying his Glock 30, a .45 caliber semiautomatic black, square-shaped handgun, in a holster inside the waistband of his pants on his left side. Defendant shoots left-handed.

Because of the road conditions, the complainant was having difficulty maneuvering his car. When a vehicle traveling in front of him began to stop, the complainant, believing he would be unable to stop in time to avoid a collision, veered into the left-hand lane and went in front of and "cut off" defendant's truck. This caused defendant to veer into oncoming traffic and his

truck to skid. Defendant regained control of his truck and proceeded to travel in the left-hand lane in front of the complainant's car. When they stopped at a red light, defendant rolled down his back window and "flipped off" the complainant with his middle finger.

Defendant said that afterwards, he felt the complainant's car "tap" or "bump" the rear of his truck. Believing that the complainant intentionally hit his truck, defendant promptly exited his vehicle, surveyed the back of his truck for damage, and then went to the complainant's car, tapped on his window, and asked why he had hit his truck. When the complainant did not respond, defendant's temper admittedly started to rise. Defendant began yelling, swearing, and using offensive language toward the complainant, flailing his arms, and knocking or banging on the complainant's car window. After noticing the young child in the complainant's car, defendant stopped yelling, re-entered his truck, and drove to work. Defendant admitted that his behavior was offensive, childish, and unacceptable, but testified that he never intended to fight the complainant and did not pull his gun out of his holster during the incident. According to defendant, when he was gesturing towards the complainant, he was flailing his arms around above his shoulders in a position where the gun in his hip holster would be visible.

The complainant's version of the incident differed in one significant detail. He testified that defendant not only approached his car window, yelled, and accused him of hitting his truck, but that defendant also tapped a gun on the complainant's car window. The complainant believed that defendant wanted him to notice that he had a gun in his hand. The complainant described the gun as black and square-shaped with "a circle of silver" or "a silver round under the barrel," which looked "kind of like a .9 millimeter gun" to him, and not a revolver. The complainant was certain that defendant held the gun in his left hand. The complainant was afraid the gun might discharge while defendant had it pointed at him, but defendant did not attempt to open his car, break his window, or kick his car, and defendant left without further incident.

Defendant testified that, after seeing that his truck was undamaged, and believing the incident to be over, he drove to work. The complainant, however, immediately called 911 and reported the incident, including that the individual, later identified as defendant, had pulled a gun on him. The complainant also told the responding officer at the scene that the individual, later identified as defendant, had pointed a handgun at him. The complainant subsequently provided a written statement to the police indicating that the individual tapped a gun on his car window.

The police officer in charge of the investigation testified that defendant was cooperative and voluntarily spoke to the police about the road rage incident. Defendant admitted that his conduct during the incident was offensive and unacceptable, that he had approached the driver's side of the PT Cruiser and had yelled and cursed at the driver. However, defendant steadfastly denied that he had pulled his gun out. The prosecution admitted as evidence at trial defendant's recorded police interview, during which defendant had used a racial slur in reference to the complainant, who was African-American.

There were no other witnesses to the incident. While the police reviewed surveillance video obtained from a CVS store located near the intersection where the incident occurred, the officer testified that the video was of poor quality and did not capture the incident clearly. The police did not provide the surveillance video to the prosecution or the defense.

As already indicated, the jury found defendant guilty of felonious assault and felony-firearm. Thereafter, defendant filed a motion for a new trial alleging various instances of prosecutorial misconduct and ineffective assistance of counsel.[1] The trial court denied defendant's motion, and defendant appealed in this Court.

## II. PROSECUTORIAL MISCONDUCT

Defendant first claims that the prosecutor engaged in two specific instances of prosecutorial misconduct. Because defendant failed to make a timely, contemporaneous objection at trial to either instance of alleged prosecutorial misconduct, he did not properly preserve these claims for review by this Court. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Therefore, our review is limited to plain error affecting defendant's substantial rights. *Id.* "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*

We review claims of prosecutorial misconduct de novo, *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001), and a trial court's decision to grant or deny a motion for new trial for an abuse of discretion, *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *Id.*

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate" the alleged misconduct in context to determine whether the defendant was denied a fair trial. *Id.* at 64. Further, this Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Callon*, 256 Mich App at 329-330.

## A. REDACTION OF POLICE INTERVIEW

Defendant argues that the prosecutor committed misconduct by selectively redacting the video of his police interview, which the prosecutor played for the jury, to highlight his use of a racial slur in reference to the complainant, thereby unduly prejudicing defendant and depriving him of a fair trial.[2] We disagree.

---

[1] Defendant raised the same issues in this Court in a motion to remand. The Court denied the motion because defendant had not demonstrated that further factual development of the record was necessary for the Court to review the issues on appeal. *People v Kendall*, unpublished order of the Court of Appeals, entered February 15, 2018 (Docket No. 337542).

[2] Although defendant objected before trial to the redaction of the interview and argued that the interview should be played in its entirety, he did not object to the redaction on the basis that it highlighted his use of racial slurs, and thus, review of this claim is limited to plain, prejudicial

"A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Dobek*, 274 Mich App at 63-64. Our Supreme Court has recognized the significance of racial remarks in a trial, stating:

> As with all forms of prosecutorial misconduct, this Court abhors the injection of racial or ethnic remarks into any trial because it may arouse the prejudice of jurors against a defendant and, hence, lead to a decision based on prejudice rather than on the guilt or innocence of the accused. Therefore, this Court is not hesitant to reverse where potentially inflammatory references are intentionally injected, with no apparent justification except to arouse prejudice. [*People v Bahoda*, 448 Mich 261, 266; 531 NW2d 659 (1995) (citations omitted).]

See also *People v Cooper*, 236 Mich App 643, 651; 601 NW2d 409 (1999) (A "prosecutor's reference to the race of the victim was . . . improper because that is hardly a proper consideration in the determination of a defendant's guilt.").

Examining the copy of the redacted police interview provided to this Court and evaluating the alleged misconduct in context, we conclude that the prosecutor's actions did not deprive defendant of a fair trial. *Dobek*, 274 Mich App at 63-64. Contrary to defendant's argument, the record indicates that the prosecutor did not redact the interview to highlight defendant's use of a racial slur, but to avoid an impermissible reference to polygraph testing. See *People v Nash*, 244 Mich App 93, 97; 625 NW2d 87 (2000) ("Normally, reference to a polygraph test is not admissible before a jury."). Thus, although the redactions did create periods of silence before and after defendant's use of a racial slur in reference to the complainant, the redaction was for a proper purpose, not for the improper purpose of arousing prejudice in the jurors against defendant. "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Moreover, that defendant used the racial slur a second time during his profanity-laced interview arguably minimized the risk of any unfair prejudice that may have resulted from the redaction surrounding his earlier racial slur.

We also note that the prosecutor did not highlight or emphasize the complainant's race or defendant's use of the racial slur in her argument. Instead, she argued generally that defendant called the complainant names and used offensive and derogatory language during the incident because he was angry, upset, and "in a rage." This argument was proper because defendant's demeanor was relevant to the jury's determination of whether he intended to place the

---

error that affected the outcome of the proceedings. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004) (noting, "[a]n objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground").

complainant in reasonable apprehension of an immediate battery.[3] Thus, on this record, we cannot conclude that the prosecutor's redaction of defendant's police interview constituted misconduct that deprived defendant of a fair trial, *Dobek*, 274 Mich App at 63-64, or resulted in plain, outcome determinative error, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new a trial on this ground. *Rao*, 491 Mich at 279.

### B. FAILURE TO TURN OVER SURVEILLANCE VIDEO

Defendant next claims that the prosecutor committed misconduct by failing to turn over to the defense a surveillance video obtained from a CVS store that was located near the intersection where the road rage incident occurred. We again disagree.

Upon request, the prosecution must provide defendants with "any exculpatory information or evidence known to the prosecuting attorney." MCR 6.201(B)(1). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process whether the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014) (discussing *Brady*). However, where the suppressed evidence was only potentially exculpatory, the defendant must show that the police or the prosecution acted in bad faith by failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). "If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012). The defendant bears the burden of proving "that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *Hanks*, 276 Mich App at 95.

Nothing in the record of the case at bar indicates that the CVS surveillance video was potentially exculpatory or useful to defendant, or that the police or the prosecutor acted in bad faith in failing to preserve and/or produce the video. See *Youngblood*, 488 US at 57-58; *Heft*, 299 Mich App at 79. To the contrary, the police officer who viewed CVS's video testified that it was of poor quality, did not have the range or angle to properly capture the intersection where the incident took place, offered a view of the intersection that was "almost blurry," and that bits of snow obscured the camera lens. The officer's testimony suggests that the surveillance video was of no evidentiary significance, and nothing in the record indicates that the video was ever in the possession of or reviewed by the prosecution, or that either the police or the prosecution acted in bad faith by failing to preserve or produce the video. *Youngblood*, 488 US at 56-58; *Heft*, 299 Mich App at 79. On this record, defendant has not established that the prosecution

---

[3] "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996) (quotation marks and citation omitted).

suppressed potentially exculpatory evidence or acted in bad faith by failing to preserve the evidence. *Youngblood*, 488 US at 57-58; *Hanks*, 276 Mich App at 95. Thus, the prosecution's failure to preserve and produce the CVS surveillance video did not deprive defendant of a fair trial and, therefore, does not constitute prosecutorial misconduct. *Dobek*, 274 Mich App at 63-64. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial on this ground. *Rao*, 491 Mich at 279.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next alleges several instances of ineffective assistance of counsel, none of which warrants appellate relief.

Defendant preserved his claim of ineffective assistance by raising the issue in a timely filed motion for a new trial. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). However, because the trial court denied defendant's motion without holding an evidentiary hearing and this Court denied defendant's motion for remand, our review is limited to the facts on the existing record. *Id.* Whether a defendant had the effective assistance of counsel presents a mixed question of fact and constitutional law. *Heft*, 299 Mich App at 80. We review factual findings for clear error and questions of law de novo. *Id.*

"A criminal defendant has the fundamental right to effective assistance of counsel." *Id.*, citing US Const, Am VI; Const 1963, art 1, § 20. "However, it is the defendant's burden to prove that counsel did not provide effective assistance." *Heft*, 299 Mich App at 80. "To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced defendant." *Id.* at 80-81, citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Heft*, 299 Mich App at 81. Further, "[t]o show that defense counsel's performance was objectively unreasonable, the defendant must overcome the strong presumption that defense counsel's decisions constituted sound trial strategy." *Id.* at 83. "This Court will not substitute its judgment for that of defense counsel or review decisions with the benefit of hindsight." *Id.*

### A. FAILURE TO OBJECT TO NONPRODUCTION OF SURVEILLANCE VIDEO

Defendant first argues that defense counsel rendered ineffective assistance by failing to object when the investigating police officer revealed during his testimony that he had viewed a CVS surveillance video that the prosecution did not turn over to the defense. We disagree.

As already discussed, defendant cannot establish that the prosecution failed to comply with its obligation to preserve or produce the surveillance video. The record does not indicate that the video was potentially exculpatory or useful to defendant, or had any evidentiary significance, for that matter, or that the police or the prosecution acted in bad faith by failing to preserve or produce it. *Youngblood*, 488 US at 57-58; *Heft*, 299 Mich App at 79. Thus, defendant cannot establish a reasonable probability that, had defense counsel objected to the prosecution's failure to produce the surveillance video, such objection and its results would have

affected the outcome of his trial. *Heft*, 299 Mich App at 80-81. Accordingly, defendant has not established that defense counsel rendered ineffective assistance on this ground.

## B. FAILURE TO IMPEACH COMPLAINANT WITH PRIOR THEFT CONVICTION

Defendant next argues that defense counsel rendered ineffective assistance by failing to impeach the complainant with his prior theft convictions under MRE 609(a). We disagree.

Evidence of a witness's prior conviction for a crime is in some instances admissible to attack the witness's credibility. Pursuant to MRE 609(a), such evidence may be admitted if it "has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

The complainant in the present case pleaded guilty in May 2013 to attempted larceny in a building, MCL 750.360, and receiving and concealing stolen property more than $200 but less than $1,000, MCL 750.535(4)(a). Attempted larceny in a building is a felony containing an element of theft, which is punishable by imprisonment for more than one year, MCL 750.360. See *People v Parcha*, 227 Mich App 236, 245; 575 NW2d 316 (1997) ("Larceny is the most basic of theft offenses . . . ."). Thus, the complainant's conviction of attempted larceny met the requirements for admission set forth in MRE 609(a)(2)(A).[4]

However, to be admissible under MRE 609(a)(2), the prior theft conviction must also be of "significant probative value on the issue of credibility." MRE 609(a)(2)(B). " 'For purposes of the probative value determination required by [MRE 609](a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity.' " *People v Snyder*, 301 Mich App 99, 105-106; 835 NW2d 608 (2013). At the time of defendant's trial in January 2017, the complainant's conviction was only 3½ years old, which potentially weighed in favor of its probative value. See *Id*. at 106 (indicating that older convictions are less probative than more recent ones). However, "our courts have not held that theft crimes are inherently of '*significant* probative value on the issue of credibility.' " *Id.*,

---

[4] The complainant's conviction of receiving or concealing stolen property more than $200 but less than $1,000 under MCL 750.535(4)(a) does not meet the requirements of MRE 609(a)(2)(A) because it is a misdemeanor punishable by imprisonment for not more than one year.

quoting MRE 609(a)(2)(B) (emphasis in *Snyder*). In fact, "our courts have held that, in general, theft crimes are minimally probative on the issue of credibility, or, at most, are moderately probative of veracity." *Snyder*, 301 Mich App at 106 (quotation marks and citation omitted).

Defendant has not asserted why the complainant's prior conviction of attempted larceny has *significant* probative value on the issue of the complainant's credibility, nor pointed to circumstances surrounding the complainant's conviction that would increase its probative value on the issue of credibility beyond the merely minimal or moderate value generally assessed for theft crimes. See *Snyder*, 301 Mich App at 106, 108 ("[W]e can discern from the record no reasons why evidence of defendant's prior larceny conviction is significantly probative of his character for truthfulness."). Because defendant has not demonstrated that the complainant's attempted larceny conviction met the requirements for admissibility set forth in MRE 609(a), he has failed to meet his burden to show that counsel's failure to use the conviction to attack the complainant's credibility was objectively unreasonable. Accordingly, defendant has failed to overcome the presumption that defense counsel provided effective assistance. See *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004) (indicating that counsel is presumed to be effective, and the burden to demonstrate otherwise is heavy burden).

Even if we assume for the sake of argument that it was objectively unreasonable for defendant's trial counsel not to seek admission of the complainant's prior conviction for attempted larceny to impeach his credibility, defendant has not established a reasonable probability that its admission would have changed the outcome of his trial. *Heft*, 299 Mich App at 81. The outcome of this case hinged largely on whom the jury believed regarding whether the defendant pulled a gun on the complainant during the road rage incident. Defendant insisted that he never pulled his gun. The complainant testified unequivocally that defendant had a gun in his hand and tapped it on his car window. His testimony was consistent with his 911 call at the time of the incident, his statement to the officer at the scene, and his written statement to the police. In addition, the complainant described the gun as black and square-shaped with a "circle of silver" or "silver round under the barrel" and not a revolver, but "kind of like a .9 millimeter." This description generally corroborated testimony by the investigating officer and defendant describing defendant's gun as a Glock 30, a .45 caliber semiautomatic square-shaped gun or a "big block." Further, the complainant testified with certainty that defendant held the gun in his left hand, which defendant corroborated with his testimony that he shoots left-handed.

In light of the consistency and details of the complainant's testimony, defendant has not established a reasonable probability that admission of a prior theft conviction with at best moderate probative value of the complainant's veracity would have changed the outcome of this trial. *Heft*, 299 Mich App at 81. Accordingly, defendant has failed to show that his trial counsel rendered constitutionally ineffective assistance by failing to use the complainant's prior theft conviction to attack the complainant's credibility.

C. FAILURE TO DISCLOSE THAT DEFENDANT WAS DRIVING WITHOUT INSURANCE

Defendant next argues that defense counsel rendered ineffective assistance by advising him not to disclose that he was driving without insurance at the time of the road rage incident.

Defendant argues that this fact was relevant to explain why he did not contact the police at the scene. We disagree.

Defense counsel has wide discretion regarding matters of trial strategy and "[t]his Court will not substitute its judgment for that of defense counsel or review decisions with the benefit of hindsight." *Heft*, 299 Mich App at 83. A decision regarding what evidence to present is a matter of trial strategy. *Dixon*, 263 Mich App at 398. Defendant argues that his trial counsel should have elicited testimony that defendant did not call the police after the incident because he was driving without insurance. However, he fails to explain how this decision was not objectively reasonable, given that he testified plausibly that he did not call the police because there was no harm to either vehicle, and to offer that he was driving unlawfully arguably risked placing him in a bad light before the jury. Defendant contends that trial counsel's elicitation of such testimony would have enhanced his credibility with the jury. This is pure speculation; it is just as likely that the jury would have viewed defendant's willingness to drive unlawfully as blatant evidence of a disregard for the law. In short, defendant has not established that his trial counsel was ineffective in this regard.

## D. FAILURE TO OBJECT TO INADMISSIBLE HEARSAY

Defendant next argues that defense counsel rendered ineffective assistance by failing to object when the police officer who responded to the complainant's 911 call testified to what the complainant told him at the scene. Again, we disagree.

Hearsay, "a 'statement,' other than the one made by a declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" is inadmissible at trial unless it falls under one of the numerous hearsay exceptions. MRE 801(c); MRE 802. Assuming without deciding that the responding officer's testimony regarding what the complainant told him at the scene was inadmissible hearsay, the question is whether trial counsel's failure to object constituted deficient performance that was outcome determinative. *Heft*, 299 Mich App at 80-81. We conclude that it was not. Given that the jury heard essentially the same testimony from the complainant, from the 911 call that the prosecution played for the jury, and from complainant's handwritten police report, which was admitted into evidence, counsel may have made the strategic decision to refrain from objecting so as not to draw additional attention to the testimony. See *People v Unger*, 278 Mich App 210, 242, 253; 749 NW2d 272 (2008) (observing, "[d]eclining to raise objections can often be consistent with sound trial strategy"). Even if we assume for the sake of argument that trial counsel's failure to object to the hearsay testimony constituted deficient performance, defendant has not shown a reasonable likelihood that the admission of the complainant's statements to the officer at the scene, even if improper, affected the outcome of his trial. *Heft*, 299 Mich App at 80-81, 84. Thus, defendant has not established a claim of ineffective assistance due to counsel's failure to challenge the admissibility of the complainant's statements to the officer.

## E. IMPROPER ELICITATION OF OPINION TESTIMONY

Defendant next argues that defense counsel rendered ineffective assistance by improperly eliciting the investigating police officer's opinion regarding defendant's credibility and by improperly bolstering the officer's credibility during closing argument. Once more, we disagree.

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71, citing *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Likewise, it is improper to vouch for the credibility of a witness by suggesting some special knowledge with respect to a witness's truthfulness. *Bahoda*, 448 Mich at 276. It is proper, however, to "argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

In the case at bar, the police officer briefly touched on the question of defendant's credibility by testifying that he felt defendant was being "up-front" about "giving the finger and swearing and that type of behavior" during the road rage incident. Defense counsel vouched for the officer's credibility by arguing during his closing that the officer has "been doing this job a long time and I'm, I'm sure he knows what he's doing and I'm sure he can pick out whether someone's telling the truth or not, but he did say . . . he was believing [defendant] was forthright with him during the interview."

Defense counsel's questioning and argument regarding issues of credibility arguably arose from a strategic decision to highlight defendant's cooperation, willingness to talk to the police, and forthrightness about his offensive behavior during the road rage incident in an effort to establish defendant's truthfulness in denying that he pulled a gun on the complainant. Although the line of questioning may have been improper, we cannot say defendant was prejudiced thereby. Moreover, the trial court's instruction to the jurors that they were to determine the facts of the case based on the evidence and their credibility assessments, that the lawyers' questions and argument were not evidence, and that police testimony was to be judged by the same standards used to evaluate other testimony cured any error in counsel's argument. See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011) ("Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors."). Once again, defendant has failed to demonstrate outcome determinative error arising from defense counsel's alleged deficiency.

## F. CUMULATIVE ERROR

Lastly, defendant argues that he was denied a fair trial and the effective assistance of counsel due to the cumulative effect of defense counsel's errors. "This Court reviews a cumulative-error argument to determine whether the combination of alleged errors denied the defendant a fair trial." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). Only actual errors are considered in determining their cumulative effect. *Bahoda*, 448 Mich at 292 n 64. We have detected no actual errors; therefore, defendant's contention that he was denied due process and is entitled to a new trial under a cumulative error theory necessarily fails. *Hill*, 257 Mich App at 152.

In conclusion, defendant has not demonstrated that his claims warrant a new trial or remand for an evidentiary hearing. Defendant has not shown that defense counsel's performance was deficient such that it fell below an objective standard of reasonableness and/or that there was a reasonable probability that counsel's performance prejudiced the outcome of defendant's trial. *Heft*, 299 Mich App at 80-81. Likewise, defendant has not demonstrated that the prosecutor's

conduct deprived him of a fair trial. *Dobek*, 274 Mich App at 63-64. Because the record is clear and defendant has not shown how further factual development would advance his claims of ineffective assistance of counsel, we find remand unnecessary. See *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973) (indicating that remand may be necessary where a defendant wishes to advance claims based on matters not of record).

Affirmed.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien