*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LARRENCE DULLIAN AVERY,

Defendant-Appellant.

UNPUBLISHED
May 7, 2019

No. 341975
Wayne Circuit Court
LC No. 16-010406-01-FC

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant, Larrence Dullian Avery, appeals as of right his convictions, following a bench trial, of second-degree murder, MCL 750.317, assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Avery to 25 to 40 years in prison for the second-degree murder conviction and 15 to 25 years in prison for the assault conviction, to be served concurrently, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

Avery's convictions arise from a shooting on October 12, 2016, in Detroit. At trial, Chanikwa Maddox testified that she was sitting in the driver's seat of her car and Quasshie Haten was sitting in the passenger's seat. They drank alcohol together. According to Maddox, someone opened the driver's side door, pointed a gun in her face, and said, "[W]hat the f**k." Although the person's nose and mouth was covered, Maddox, who had seen Avery two or three times before, recognized the person as Avery based on his eyes, eyebrows, and forehead. According to witnesses, Avery and Quasshie were friends, and Avery's nickname was Forman. When the gunman confronted Quasshie and Maddox, Quasshie responded by stating, "Forman, bro, what are you doing?" Maddox testified that Avery "stood there with a gun in my face like he was shocked," but then stated, "F**k it, b***h," and started shooting. Maddox was shot three times, but survived. Quasshie, however, suffered a fatal gunshot wound to his head. After the shooting, Maddox ran inside a nearby apartment building and yelled that "Forman" had just shot her and Quasshie. The principal issue at trial was Avery's identity as the gunman.

## I. SUFFICIENCY

On appeal, Avery argues that the evidence was insufficient to support his convictions. We disagree. This Court reviews de novo the sufficiency of the evidence at a bench trial. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

> This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. All conflicts in the evidence must be resolved in favor of the prosecution. [*People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008) (citations omitted).]

Avery does not challenge any offense-specific element and, instead, argues that the evidence was insufficient to prove his identity as the perpetrator of the crimes. Identity is an essential element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

There was sufficient evidence to conclude that Avery was the perpetrator of these crimes. Maddox testified that on the night of the shooting, she recognized Avery as the person who opened her driver's side door and pointed a gun at her. From the passenger's seat, Quasshie, who knew Avery, spoke to the gunman, referring to him as Forman. Maddox testified that she knew that Avery's nickname was Forman, and she had seen him before. Others also testified that Avery's nickname was Forman. Although the shooter wore a mask covering the lower portion of his face, Maddox testified that she nevertheless recognized the exposed portion of his face. Immediately after the shooting, Maddox went inside the apartment building, where her boyfriend (Quasshie's brother, Daquawon Haten) was with a group of people, and reported that Forman had shot both her and Quasshie. Maddox also identified Avery as the shooter in a photographic array and at trial.

Avery argues that Maddox's identification was flawed because she did not know him and she could only see the portion of his face above his mouth. "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Despite the mask covering the shooter's mouth and part of his nose, Maddox testified that she was able to identify Avery based on the top of his face, including his eyes, eyebrows, and forehead. Maddox explained that even though she did not know Avery personally, she recognized him because she had seen him two or three times before. Resolving all conflicts in favor of the prosecution, the trial court could reasonably infer that Maddox identified Avery as the shooter based on her familiarity with him.

Avery notes that Maddox failed to report to the first responding officer that Forman was the shooter. But the officer testified that it was not his responsibility to investigate the crime and he did not conduct an investigation when he arrived first at the scene. Avery also claims that Maddox's identification was not based on her own observations of the shooter, but was instead influenced by Quasshie's reference to "Forman" during the shooting and Daquawon's identification of Forman as Avery in a Facebook photograph. However, both Daquawon and Maddox denied reviewing any photographs of Avery before Maddox independently identified Avery in the photographic array as the shooter. And the prosecution was not required to negate

every reasonable theory of innocence. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Avery argues that he had no motive to shoot Quasshie or Maddox, and cites testimony that he and Quasshie were friends. But motive is not an essential element of the charged crimes. See *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). And despite Avery's friendship with Quasshie, the trial court could nevertheless infer some tension in their relationship from evidence of Avery's Facebook posting that he did not care about Quasshie's death.

Avery claims that there was no physical evidence, such as fingerprints or DNA, to support Maddox's identification. He also calls her explanation of the shooting into question by arguing that the recovery of shell casings from more than one gun suggested that there were multiple shooters. These were factors that affected the weight and credibility of the identification testimony and were for the trial court, as the trier of fact, to resolve. "[T]his Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *Davis*, 241 Mich App at 700. Maddox testified that she only saw one shooter—Avery— and he stood by her driver's side door as he shot into the car. There were multiple .380-caliber shell casings recovered inside the car and they were fired by the same weapon. The prosecution argued that the court could infer that the .40-caliber shell casing, which was recovered outside of the car and on the passenger's side, was not related to this shooting. But even if there had been a second shooter somewhere else at the scene, a reasonable trier of fact could nevertheless credit Maddox's identification of Avery as the shooter standing next to her.

Viewing the evidence as a whole and resolving all conflicts in favor of the prosecution, there was sufficient evidence to demonstrate that Avery was the perpetrator.

## II. GREAT WEIGHT OF THE EVIDENCE

Avery also argues that his convictions were against the great weight of the evidence. A new trial may be granted when "the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998) (quotation marks and citation omitted). Where a challenge to the great weight of the evidence follows a bench trial, this Court examines the trial court's findings for clear error, giving regard to the court's special opportunity to judge the credibility of witnesses. MCR 2.613(C).

A verdict generally may be overturned as against the great weight of the evidence only when it is not reasonably supported by the evidence and the verdict was "more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Conflicting testimony and questions involving witness credibility are not sufficient grounds for vacating a conviction. *Id*. at 469-470.

Although Avery challenges Maddox's identification of him as the shooter by attempting to undercut her familiarity with him, claiming she failed to report Forman's name to the responding officer, claiming she was influenced by Daquawon's identification of Avery as

Forman in a photograph, and noting her limited view of the shooter's face, the trial court found that Maddox's testimony was compelling. And Maddox consistently identified Avery, who she knew as Forman, as the shooter. Moreover, Quasshie's identification of Forman just prior to the shooting may have facilitated Maddox's recognition of him. The trial court's credibility determination is entitled to special deference. *People v Sherman-Huffman*, 241 Mich App 264, 267; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002).

Avery again claims that there was no motive or corroborating physical evidence, but these facts were not required to convict him. Avery does not argue that the verdict was the result of causes outside the record, such as passion, prejudice, or sympathy. *Lacalamita*, 286 Mich App at 469. Ultimately, the evidence supports the trial court's findings, and those findings are not clearly erroneous. Accordingly, Avery is not entitled to a new trial.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Avery argues that a *Ginther*[1] hearing is necessary to determine whether defense counsel was ineffective for failing to call an expert to testify regarding Avery's cell phone records, which defense counsel had stated at trial were exculpatory because its location-tracking technology proved Avery was not at the scene of the crime. We disagree.

The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

Defense counsel has a duty to make a reasonable investigation. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses, meaning those that might make a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). In other words, defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52 (quotation marks and citation omitted). But "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Avery criticizes defense counsel for not calling an expert to interpret available cell phone data and requests a remand for the opportunity to develop a factual record on this issue, but he offers no factual support for any finding that the expert could have provided favorable testimony. We will not require the trial court to conduct a hearing regarding the effectiveness of counsel without a proper offer of proof. See MCR 7.211(C)(1)(a) (requiring a motion to remand be supported by an affidavit or offer of proof regarding the facts to be established at a hearing).

The available record establishes that defense counsel satisfied his duty to make a reasonable investigation into whether the phone records were exculpatory. *Grant*, 470 Mich at 485. He requested an adjournment to hire an expert, he then hired the expert, and he obtained a report regarding the phone records. Informed by the expert's report, defense counsel decided not to offer the expert's testimony. Defense counsel's decision is presumed to be strategic. *Horn*, 279 Mich App at 39. Avery has failed to identify any information in the report or other evidence to establish a reasonable probability that, but for counsel's decision not to introduce the expert's testimony about the phone records, the result of the proceedings would have been different. Accordingly, Avery has failed to establish that he was denied the effective assistance of counsel.

## IV. AVERY'S STANDARD 4 BRIEF

Avery raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which warrant appellate relief.

## A. JUDICIAL BIAS

Avery cites numerous rulings and statements by the trial court, which he claims demonstrate that the court was biased against him. Because Avery did not raise a claim of judicial bias in the trial court, this issue is unpreserved. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Avery's unpreserved claim is reviewed only for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A defendant has the right to a fair and impartial trial under both the United States and Michigan Constitutions. See US Const, Am VI; Const 1963, art 1, § 20. A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption. *Jackson*, 292 Mich App at 598. "The mere fact that a judge ruled against a litigant . . . is not sufficient to require disqualification or reassignment." *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Id*. (quotation marks and citation omitted; alteration in original). See also *Jackson*, 292 Mich App at 598.

Avery cites evidentiary rulings by the court, which precluded testimony that was either redundant or irrelevant. Avery does not challenge the rulings themselves, which merely involved the court fulfilling its duty to control the courtroom and the examination of witnesses. MCL 768.29; MRE 611(a). To the extent that Avery infers impatience or frustration from the court's rulings and other statements intended to move the trial along, there is no evidence of deep-seated favoritism or antagonism that would have affected the court's decision-making

process. *In re Contempt of Henry*, 282 Mich App at 680. Avery also complains that the court made additional factual findings after the trial and before sentencing to support the verdict. But again, there is no evidence of deep-seated antagonism in the court's decision to supplement its findings. Rather, the court was fulfilling its duty under MCR 6.403 to "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment."

Avery claims that the cumulative effect of the trial court's conduct requires reversal. This Court has explained that, in reviewing claims of judicial bias, it should conduct a "fact-specific analysis," "consider[ing] the cumulative effect" of any errors. *People v Stevens*, 498 Mich 162, 171-172; 869 NW2d 233 (2015). But only actual errors are considered in determining their cumulative effect. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). Avery has not pointed to any errors outside the scope of the judge's permitted court administration. Absent any actual errors related to judicial bias, Avery's contention that he was denied due process and is entitled to a new trial under a cumulative-error theory necessarily fails. See *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003).

## B. CONFRONTATION

Avery next makes various claims that his constitutional right of confrontation was violated. Again, Avery never raised any claim below regarding his constitutional right of confrontation, thereby limiting our review of this issue to plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

In every criminal trial, the federal and state constitutions protect a defendant's right to be confronted with the witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. A primary interest secured by the right to confrontation is the right of cross-examination. *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). "A limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v Kelly*, 231 Mich App 627, 644; 588 NW2d 480 (1998). But "neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-examine on any subject." *Adamski*, 198 Mich App at 138. "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (citation omitted; alteration in original). Trial courts retain "wide latitude . . . to impose reasonable limits on . . . interrogation that is repetitive or only marginally relevant." *Adamski*, 198 Mich App at 138 (quotation marks and citation omitted).

Avery cites the trial court's dismissal of Officer Antonio Carlisi during defense counsel's recross-examination and Sergeant Nancy Foster during redirect examination. In both circumstances, defense counsel had begun questioning the witnesses on redundant matters. The trial court determined that defense counsel had already elicited testimony from Officer Carlisi that he did not have any personal knowledge about Forman, but had obtained certain information about Forman from other officers at the scene. Likewise, Sergeant Foster had already testified that, in Maddox's written statement to the police, she did not provide a physical description of the shooter aside from her description of his mask. The trial court did not violate Avery's right

of confrontation by precluding further questioning on these subjects. Because the trial court had wide latitude to place limits on repetitive testimony, *id.*, Avery cannot establish that the trial court's dismissal of these witnesses constituted plain error. Avery makes no argument that the dismissal of the witnesses affected his substantial rights. He does not claim that, but for the dismissal, defense counsel would have asked a question of these police witnesses that would have elicited new information or made a difference in the outcome of the trial.

Avery also argues that the trial court violated his right of confrontation when it ruled that defense counsel's questioning of Sala McIntosh, Quasshie's mother, was not relevant. As the trial court explained, McIntosh did not observe the shooting and had no testimony to offer regarding the apartment building where the shooting occurred. She was only called by the prosecutor to identify Avery as Quasshie's friend and testify that Avery's nickname was Forman. Defense counsel's questions regarding whether McIntosh lived at the apartment building where the shooting occurred, visited there, or was present at the time of the shooting were not relevant. See MRE 401. The trial court did not plainly err by imposing limits on this line of questioning. *Adamski*, 198 Mich App at 138. Furthermore, Avery does not argue how defense counsel's questions or any additional questioning could have made a difference in the outcome of the trial.

Last, Avery argues that the trial court violated his right of confrontation when it precluded defense counsel's question to Maddox regarding whether she had provided truthful and honest testimony. Maddox had already sworn to tell the truth before testifying. Any further self-evaluation of her truthfulness would have been repetitive. The trial court did not plainly err by using its wide latitude to limit this questioning. *Id*. Moreover, because the question was cumulative, Avery cannot establish that the trial court's ruling affected his substantial rights.

## C. SEQUESTRATION

Avery argues that the trial court broke the chain of sequestration when it excused Maddox and allowed her to enter the witness room during a 10-minute break in her testimony. Avery's unpreserved claim is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

"The decision whether to order the sequestration of a witness is left to the discretion of the trial court." *People v Jehnsen*, 183 Mich App 305, 309; 454 NW2d 250 (1990). "The purposes of sequestering a witness are to prevent him from coloring his testimony to conform with the testimony of another, and to aid in detecting testimony that is less than candid." *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008) (quotation marks and citations omitted). The trial court ordered sequestration at the beginning of Avery's trial. The trial court stated that witnesses were required to be out of the courtroom and the penalty for not obeying the order was the prohibition of testimony. There is no record evidence that the order was violated by any witness's presence in the courtroom during the trial. Although Avery claims that Maddox's visit to the witness room for a 10-minute recess during her testimony amounted to a break in the chain of sequestration, there is no evidence that other witnesses were present at that time or that there was any discussion of the case. Moreover, given the trial court's instruction to Maddox not to discuss her testimony with anyone during the brief recess, even if Avery could establish that an error occurred, he cannot establish that it affected his substantial rights.

## D. CUMULATIVE ERROR

Avery again argues that the cumulative effect of all the alleged errors, including his claims regarding judicial bias, confrontation, and sequestration, requires reversal. But, again, Avery has not identified any actual errors, and thus, there is no cumulative effect of errors that would warrant relief. *Bahoda*, 448 Mich at 292 n 64.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica