*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AARON MATHEW SULAK,

Defendant-Appellant.

UNPUBLISHED
September 19, 2025
9:51 AM

No. 367135
Charlevoix Circuit Court
LC No. 22-034714-FC

Before: SWARTZLE, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

Defendant was convicted at trial of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b). On appeal, defendant challenges the admission of evidence, argues that the prosecutor engaged in error or misconduct, and argues that defendant received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

Defendant was in a relationship with the victim's mother, Amanda McVannel, from November 2013 through December 2017. The victim, KR, reported that defendant repeatedly sexually assaulted her from when she was approximately seven or eight years old through 10 years old. Defendant would take KR to the bathroom at night to help her avoid wetting the bed, and, when doing so, he would touch her buttocks, vagina, and chest. If she wet the bed, then defendant would spank her. When KR was approximately 10 years old, defendant, smelling of alcohol, "got on top of" KR in her bed and engaged in digital and penile penetration.

Approximately one year after defendant and McVannel separated, KR first disclosed the abuse to a friend. Eventually KR shared some information about the abuse with her mother, and McVannel contacted children's protective services. KR did not disclose the entirety of the abuse, including to her forensic interviewer, because she "didn't want it to get too far," such as resulting in court proceedings.

-1-

Before trial, defendant moved the trial court to preclude expert testimony by Barbara Welke, a social worker. In response, the prosecutor asserted that he would not ask Welke to testify about whether or not a sexual assault occurred. Instead, Welke's testimony would be helpful to explain delayed disclosures after defense counsel "highlighted [KR]'s delay in reporting the abuse as well as her incremental disclosure" during the preliminary examination. During a hearing on the motion, the prosecutor asserted that Welke would not provide information specific to KR. The trial court noted that Welke, or any other expert, could not vouch for KR's credibility, but determined that Welke's testimony was admissible. Specifically, the trial court determined that "unreasonable" prejudice did not outweigh the probative value.

Defendant also moved the trial court to exclude expert testimony by Dr. Marit Vogel "regarding the credibility of" KR, KR's diagnoses, or any of KR's behaviors "in an attempt to give an opinion as to whether any sexual assault occurred in this case." During a hearing on defendant's motion, the prosecutor stated that defense counsel had previously raised the issue of whether KR had a history of hallucinations, at which point the prosecutor determined that he needed to refute that evidence at trial. The prosecutor argued, "If [the defense is] going to bring up hallucinations, I have to refute it." Dr. Vogel was prepared to testify about KR suffering from hallucinations because of "extreme stress," rather than from schizophrenia. As to defendant's concern about Dr. Vogel vouching for KR's credibility, the prosecutor was "in agreement," and he would not ask Dr. Vogel about whether KR was credible. The prosecutor argued that Dr. Vogel should be permitted to testify that KR was suffering from stress and posttraumatic stress disorder (PTSD), but the prosecutor would not ask Dr. Vogel for her opinion on what caused the PTSD. The trial court remarked that it appeared that Dr. Vogel's testimony was "more rebuttal-type evidence to respond to the hallucination argument." The trial court noted that calling Dr. Vogel during rebuttal, if the issue was raised, was an option.

Defense counsel also raised an issue of McVannel reporting that defendant had, at some point, taken away KR's Halloween candy and told KR that she needed to kiss him to get the candy back. Further, defendant had, allegedly, asked McVannel what she would think if they got divorced, and defendant and KR "ended up together." The prosecutor argued that the evidence was admissible.

A stipulated written order indicated that Dr. Vogel could not vouch for KR's credibility, but she could testify about her diagnoses of KR, including her opinion on why KR suffered hallucinations. Dr. Vogel could not, however, testify about whether she believed KR's allegations or whether KR was a victim, or the cause of KR's PTSD or behaviors. Further, defendant's statement about a relationship with KR was admissible, but evidence of defendant's statement about the Halloween candy was not admissible.

In the prosecutor's opening statement at defendant's trial, the prosecutor addressed KR's delayed and incremental disclosure of the abuse. Further, the prosecutor stated that the jury would "have to grapple with" KR's mental health after disclosing the abuse and that sometimes trauma was "reflected" in a person's mental health. The prosecutor explained that the jury would hear that KR "felt the presence of Lucifer," in what the jury would potentially hear described as a hallucination. Defense counsel also referred to the "hallucinations" in his opening statement.

KR testified, and, during her cross-examination, acknowledged that she only first disclosed the penile penetration during defendant's preliminary examination. Further, KR acknowledged that, in her forensic interview, she reported that defendant had only touched her one time and that she had previously omitted that abuse had occurred in the bathroom. Defense counsel asked KR about "seeing Lucifer," and KR denied seeing him, but she explained that she "imagined" and felt like he was with her. KR also stated that she had screamed when defendant spanked her in the bathroom.

McVannel testified that KR moved in with her and defendant in January 2014, after which time KR's mood changed over time, from happy to sullen and withdrawn. When McVannel was married to defendant, they attempted to wake KR during the night to use the bathroom. At some point, they resorted to corporal punishment, although they stopped this when McVannel did not find it to be helpful.

The prosecutor asked McVannel if there was "anything else [her] mind, that looking back, [gave her] concerns about the relationship between [KR] and the Defendant?" McVannel began to explain that one Easter, the children "had gotten candy from the Easter bunny" upon which the prosecutor interrupted, preventing McVannel from continuing, and asked for the trial court to excuse the jury. Outside of the presence of the jury, the prosecutor explained that he had not told McVannel that the candy incident was inadmissible. The trial court and defense counsel agreed that the prosecutor prevented McVannel from answering the question beyond mentioning candy. The jury was brought back in, and McVannel continued her testimony.

According to McVannel, defendant once asked her how she would react if they separated and defendant had a relationship with KR. When defense counsel asked McVannel about concerns that a cousin "Mikey" had abused KR, and KR going to see a doctor about it in 2014, McVannel stated that she had not reported to the police at that time that she suspected abuse.

The trial court qualified Welke, a forensic interviewer with a master's degree in social work, as an expert in the process of disclosure. Defense counsel objected, but the trial court stated that the jury would decide the weight of Welke's testimony. Welke defined a "forensic interview" as "a structured conversation with a child that's done by a trained professional in a neutral setting." She described that the interview's goal was "to obtain a statement" from the child, which would "either support or refute an allegation of abuse." Welke stated that she had not reviewed any of KR's records. Further, Welke testified about the general process of an alleged victim's disclosures of sexual abuse, including that disclosure of sexual abuse is an ongoing process, "often delayed" and typically gradual or "incremental." Welke described delayed disclosure and the reasons it occurs. Further, Welke cited studies regarding the prevalence of delayed disclosure and offered reasons for a victim's inconsistent statements regarding abuse. Welke testified that a "delay in disclosure doesn't have any bearing on—on the credibility of the disclosure."

Before Dr. Vogel testified, defense counsel renewed his objection to her testimony. Defense counsel acknowledged that part of the defense strategy was to argue that KR's testimony was unreliable because she reported having experienced hallucinations. The prosecutor confirmed that he was not asking Dr. Vogel to vouch for KR's credibility through the diagnosis, and the trial court allowed the testimony and qualified Dr. Vogel as an expert in child and adolescent psychiatry.

Dr. Vogel testified that she evaluated KR and had two follow-up appointments with her. Dr. Vogel diagnosed KR with major-depressive disorder, without psychosis; PTSD; and attention deficit hyperactivity disorder. KR did not, however, have psychosis-induced hallucinations. Dr. Vogel explained that there were several reasons that a person may experience hallucinations, with trauma as one possible cause. Dr. Vogel testified that PTSD could have many causes and described KR as having symptoms that included suicidal ideation, difficulty sleeping, fear, flashbacks, "mild hypersexual behaviors," relationship issues with McVannel, and low self-esteem.

Deputy Michael Frazee, with the Charlevoix County Sheriff's Office, testified that he interviewed defendant about the allegations, and defendant denied the allegations. Deputy Frazee stated that he never interviewed "Mikey" about the case.

Defendant also testified, and he explained that when he first started spending time with KR, "[s]he had a big problem wetting the bed." Defendant helped take her downstairs to the bathroom many times. He would lightly spank KR over her clothes if she had more than one instance of enuresis in a night, and he did so on no more than five occasions. Defendant also testified that he and McVannel took KR to the doctor in 2014 because KR had been constipated, and McVannel had been concerned that this was a symptom of possible sexual abuse by a cousin. When defendant spoke with Deputy Frazee, he reported his concerns about Mikey.

Defendant acknowledged his conversation with McVannel about him having a romantic relationship with KR if he and McVannel divorced, but defendant explained that he had been joking, comparing the age difference to his own mother's and stepfather's 27-year age gap.

On cross-examination, the prosecutor asked defendant about his alcohol use. Defense counsel objected on the basis that the evidence was irrelevant and constituted improper character evidence. The prosecutor argued that he was not presenting the information as character evidence, but, instead, for its impact on defendant's memory. The trial court overruled the objection on the basis that the evidence of defendant's drinking at the time of alleged incidents was "a legitimate credibility issue," reasoning that "if someone drank a 30 pack every day during the relevant period of time, that's going to definitely impact their memory." The trial court stated that the information was prejudicial, but not "unfair in light of how relevant it is," and it was not being offered as character evidence. The trial court further stated that defendant had "put his credibility at issue." Defendant testified that he was drinking approximately 24 cans of beer each day during his marriage to McVannel, except for an 18-month period during which he was serving probation. When asked why KR would make these allegations, defendant responded, "Because she's delusional."

McVannel testified in rebuttal that there was "no Cousin Mikey," but there had been a concern about previous sexual abuse, and defendant may have been referring to a cousin "Kenny." McVannel was never concerned that Kenny had abused KR, but defendant had raised the concern with McVannel.

During his closing argument, the prosecutor argued that he had asked the jury to focus on how KR acted during her testimony to determine whether she seemed credible and to also ask why KR would put herself through the trial "unless it was the truth." The prosecutor argued that, when he asked defendant why KR would make the allegations, the question surprised defendant "and

resulted in a pregnant pause, a notable pause," before defendant stated that KR was delusional, but Dr. Vogel had "disproven" that theory. Further, the prosecutor argued that the jury heard corroboration from witnesses who testified about facts that fit with KR's testimony. When the prosecutor began a statement about defendant's explanation, defense counsel objected on the basis of "burden shifting." The prosecutor stated that he had not put a burden on defendant, but was stating that the evidence "wasn't disproven." The trial court reminded the jury that "the defense does not have to prove that the Defendant is innocent," and the burden of proof was on the prosecutor. The prosecutor agreed.

Defense counsel argued that KR had given different versions about the abuse. Further, KR may have been mistaken, considering her testimony "that she had visions, that she saw Lucifer at time, other unknown figures." Defense counsel asked the jury to consider how those thoughts would impact KR's testimony and observations. Defense counsel additionally argued that defendant referred to KR as delusional in the sense that "she made it all up" and "maybe she suffered from some of these visions, or distortions of reality." Further, defense counsel argued that defendant "drank a lot," but there was no evidence that he had "blacked out or lost memory." The jury had also heard the concern about a cousin abusing KR. Additionally, there had not been "a sufficient investigation" in this case, as nobody interviewed certain witnesses, including KR's sister or friend, or the cousin. Defense counsel argued that KR testified that she had screamed on at least one occasion in the bathroom, and it seemed likely that McVannel would have heard that from the neighboring bedroom. Further, KR shared a bedroom with her sister, and it seemed likely that her sister would have heard "forcible sex," especially when "you add a scream."

In rebuttal, the prosecutor noted that people referred to the justice system as "the best system the world has ever known," but that "there are unjust things about this system," including that children had "to come in and talk about brutal things that were done to them." Further, sometimes children were "unfairly impeached, or things are said about them that they did not say themselves." The prosecutor stated that defense counsel called the assault "forcible sex" and stated that KR screamed during the assault, but KR did not make those statements, but, instead, referred to screaming when spanked. According to the prosecutor, defense counsel "mischaracterized" KR's testimony, which was "not just." Referring to defendant's claim that he had been concerned about a family member abusing KR, the prosecutor stated that the jury "heard that there was not any follow up to that. We can't tell you what the doctor said. There are rules against that, but you did hear that there was not follow up."

During jury instructions, the trial court explained that the prosecutor was required to prove each element beyond a reasonable doubt and that defendant was not required to prove his innocence. Further, the trial court explained that the jury could only consider the evidence that defendant "regularly consumed large amounts of alcohol" for the potential impact that it had on defendant's memory or as it related to KR's testimony that she smelled alcohol.

The jury found defendant guilty of one count of CSC-I for digital penetration and one count of CSC-II, and the jury acquitted defendant of one count of CSC-I related to the penile penetration. The trial court sentenced defendant to 25 to 40 years in prison for the CSC-I conviction and five to 15 years in prison for the CSC-II conviction. After sentencing, defendant moved for a new trial or an evidentiary hearing, and the trial court denied the motion.

Defendant now appeals.

## II. ANALYSIS

## A. EXPERT TESTIMONY

First, defendant argues that the prosecutor's expert witnesses presented rape-syndrome evidence, or evidence of probable pediatric sexual abuse, improperly vouching for the credibility of KR. We review for an abuse of discretion a trial court's decision to admit evidence. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We generally review de novo a claim of prosecutorial error, but we review unpreserved claims of prosecutorial error for plain error affecting substantial rights. *McGhee*, 268 Mich App at 630. To avoid forfeiture under the plain-error rule, a defendant most demonstrate that an error occurred, the error was clear or obvious, and the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent person or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (cleaned up).

"An expert may not vouch for the veracity of a victim." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Accordingly, an expert may not engage in "unwarranted reinforcement of the complaining witness's testimony" by giving "a stamp of scientific legitimacy to the truth of the complaining witness's factual testimony." *People v Izzo*, 90 Mich App 727, 730; 282 NW2d 10 (1979). An expert may not testify that a specific victim's allegations are truthful or that abuse occurred. *People v Garrison (On Remand)*, 187 Mich App 657, 658; 468 NW2d 321 (1991). Moreover, sexual-abuse "syndrome evidence is not admissible to demonstrate that abuse occurred." *People v Peterson*, 450 Mich 349, 369; 537 NW2d 857 (1995). An expert may, however, "testify regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility." *Id.* at 373. An expert may not testify that abuse occurred solely on the basis of a victim's report. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019).

Defendant argues that Welke's testimony regarding disclosure was not necessary because it is commonly understood that a child often delays disclosure of sexual abuse. Trial courts, however, "regularly admit expert testimony concerning typical and relevant symptoms of abuse, such as delayed reporting and secrecy." *People v Muniz*, 343 Mich App 437, 443; 997 NW2d 325 (2022). "[T]he behavior of victims of varying kinds of trauma often appears irrational and confusing to most people; and expert testimony is admissible and appropriate to explain that behavior with no need to engage in an analysis of scientific reliability." *People v Spaulding*, 332 Mich App 638, 659; 957 NW2d 843 (2020).

In this case, Welke's general testimony regarding delayed disclosure provided relevant information, and defendant has not presented any basis for concluding that Welke's testimony strayed from its proper purposes. Further, Welke's explanation of the forensic-interview process did not vouch for KR's credibility. Welke's statements about the forensic-interview process,

which were primarily centered on her qualifications as an expert, demonstrated that the protocol could either support or refute an allegation. Defendant argues that Welke's use of the word "disclosure" implied that KR was bringing forth a hidden "truth" and that defendant was guilty. Her statements, however, were not specific to KR and did not constitute any comment on the veracity of KR's specific allegations. Significantly, Welke acknowledged that she had not spoken with KR or reviewed any of her records. Therefore, Welke's testimony was not improper and did not vouch for the credibility of KR, and the trial court did not err by allowing it.

Next, defendant challenges the admission of Dr. Vogel's testimony, arguing that Dr. Vogel's testimony improperly implied that, because KR had emotional difficulties, particularly PTSD, that defendant must have caused KR's trauma by abusing her. Dr. Vogel testified about KR's diagnoses, but the testimony was devoid of any reference to sexual abuse. After Dr. Vogel revealed that one of KR's diagnoses was PTSD, Dr. Vogel also testified that PTSD could have many causes. Dr. Vogel referred to "flashbacks," but she did not specify any allegations of sexual abuse. Dr. Vogel properly testified about KR's hallucinations without directly or indirectly referring to KR's allegations. Accordingly, the trial court did not abuse its discretion by allowing Dr. Vogel's testimony regarding KR's psychiatric diagnoses.

Relatedly, defendant argues that the prosecutor committed misconduct by violating the trial court's pretrial directives that Dr. Vogel's testimony only be offered in rebuttal and that the expert testimony not be offered specifically to prove defendant's guilt. Because the responsibility of a prosecutor "is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Dobek*, 274 Mich App at 63.[1]

As discussed, neither expert opined that KR was telling the truth or that defendant was guilty. Welke did not testify specifically about KR, and Dr. Vogel did not refer to KR's sexual-abuse allegations. Accordingly, the prosecutor did not err by offering these testimonies. Although defendant argues that the trial court ruled that the prosecutor could offer Dr. Vogel's PTSD testimony only in rebuttal, the order after the pretrial motion allowing Dr. Vogel's testimony did not require it only be presented in rebuttal. Further, the prosecutor raised the issue of KR's mental state in his opening statement, but the opening statement is not evidence and only suggested that the jury would need to consider KR's mental state when interpreting the evidence.

As to the prosecutor's closing arguments related to KR's mental health, prosecutorial comments must be evaluated in context. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors have "great latitude regarding their arguments," and "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). Defendant argues that the prosecutor misused syndrome evidence, but the prosecutor properly argued several points

---

[1] "Prosecutorial misconduct" is a term of art often used to describe any error committed by a prosecutor, even though most claims of error by a prosecutor are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.'" *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

of evidence that "corroborated" KR's allegations, including that she had mental-health struggles. Therefore, defendant has not demonstrated prosecutorial error or misconduct.

## B. EVIDENCE OF ALCOHOL USE

Next, defendant argues that the trial court erred by admitting evidence of his alcohol consumption. "Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). See also MRE 402.[2] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401.

Defendant contends that evidence of his drinking was irrelevant to whether he committed the offenses and had no bearing on his credibility because, as he argues on appeal, he would remember if he had sexually assaulted KR. With respect to the alcohol consumption, KR did testify that defendant smelled of alcohol on one occasion in her bedroom. Further, our Supreme Court has held that a defendant's substance use at the time of an incident may be relevant to the impact that the substance could have had on the defendant's behavior or memory. *People v Sholl*, 453 Mich 730, 740-741; 556 NW2d 851 (1996). With that said, the prosecutor offered the evidence, and the trial court permitted it, solely on the basis of defendant's memory and credibility. The prosecutor did not, for example, offer the alcohol evidence to show defendant's identity as the assailant in KR's bedroom, nor did the prosecutor use the evidence to somehow explain defendant's assaultive behavior.

In fact, during trial, defendant did not deflect blame by saying that he did not remember assaulting KR. Rather, he flatly denied it, and when asked why KR would make such allegations, he said she was "delusional." This was a "he said/she said" trial, not a "he doesn't remember/she said" trial.

Given this, it was error for the trial court to admit the evidence of alcohol consumption. This was classic character evidence, as the alcohol consumption itself had no direct relationship to the sexual assaults (at least according to the evidence offered at trial), but instead amounted to other-acts evidence used to paint defendant in a negative light. Such other-acts evidence can be permitted to show a lack of memory (i.e., "knowledge" or "absence of mistake or accident," MRE 404(b)(1)), but as already explained, defendant's memory was not particularly relevant in this trial. The evidence should have been inadmissible as largely, if not wholly, irrelevant, and unfairly prejudicial.

Non-constitutional evidentiary errors are not, however, grounds for reversing a jury verdict except in the rare circumstance. Specifically, reversal is not warranted "unless it affirmatively appears that, more probably than not, it was outcome determinative." *People v Krueger*, 466 Mich 50, 54; 643 NW2d 223 (2002). Here, defendant has not made this showing. The evidence of defendant's alcohol abuse was a relatively minor part of defendant's testimony and the trial

---

[2] The Michigan Rules of Evidence have been amended since the time of defendant's trial. The rules at issue in this case remain substantially the same, but this opinion uses the rules as they were written at the time of these proceedings.

evidence as a whole. The trial court gave a proper limiting instruction to the jury regarding the alcohol-use evidence. Moreover, the *key* evidence—KR's testimony of abuse versus defendant's testimony of no abuse—did not involve alcohol, except for KR's one-word answer that defendant smelled of "alcohol" during the bedroom incident. The jury acquitted defendant of one of the CSC-I counts that occurred in that incident. Based on our review of the record, the improper introduction of defendant's alcohol was not "more probably than not" outcome determinative here.

## C. OTHER CLAIMS OF PROSECUTORIAL ERROR

Next, defendant argues that the prosecutor committed error by introducing evidence about defendant telling KR that she could have her candy returned to her if she kissed him when the trial court had already determined that the evidence was inadmissible. This evidence, however, did not reach the jury. As defense counsel acknowledged at trial, and the trial court agreed, the prosecutor successfully prevented McVannel from offering the excluded testimony. Therefore, defendant has not demonstrated prosecutorial error in this regard.

Defendant also argues that the prosecutor committed several errors in closing argument. Specifically, defendant argues that the prosecutor improperly shifted the burden of proof to defendant to prove his innocence, including relying on his question to defendant about why KR would make the allegations. The United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." US Const, Am V. See also Const 1963, art 1, § 17. A prosecutor may not comment on a defendant's silence. *People v Guenther*, 188 Mich App 174, 177; 469 NW2d 59 (1991).

The prosecutor's remarks in context, including his comment on defendant's "pause," were part of the prosecutor's proper argument that KR's testimony was credible, while defendant's testimony was not credible. "A prosecutor's remark that evidence is undisputed is proper in urging the weight to be given the testimony." *Id*. Accordingly, the prosecutor's argument was a permissible argument on the basis of the evidence presented at trial. Even if the prosecutor erred in his closing argument, however, both the trial court and the prosecutor responded to defense counsel's objection on the basis of burden shifting by reminding the jury that it was the prosecutor's burden to prove defendant's guilt and that defendant did not have to prove anything to be found not guilty. The jury is presumed to have followed the trial court's clear instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Next, defendant argues that the prosecutor unfairly invited the jury to sympathize with KR. "It is improper for a prosecutor seek the jury's sympathy for the victim." *Dobek*, 274 Mich App at 80. Defendant challenges the prosecutor's statements about it being unjust that the criminal justice system requires children to testify, suggesting that defendant's demand for a jury trial forced KR to testify. The prosecutor explained his statement, however, concluding that defense counsel mischaracterized KR's testimony to benefit his claim. These words, considered in context, were not appeals for the jury to sympathize with KR, but were proper rebuttal of the defense counsel's closing argument.

Relatedly, defendant argues that the prosecutor unfairly denigrated the defense by asserting that defense counsel had mischaracterized KR's testimony. A prosecutor may not disparage a defendant's exercise of the constitutional right to present a defense. *People v Sterling*, 154 Mich

App 223, 232; 397 NW2d 182 (1986). Moreover, a prosecutor may not question the veracity of a defendant's trial counsel or suggest that defense counsel is attempting to mislead the jury. *Unger*, 278 Mich App at 236.

If a defendant, however, advances an alternate theory that would exonerate the defendant, then a prosecutor's "comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995). A "prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence." *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003) (cleaned up). In this case, the challenged remarks directly rebutted defendant's theory about KR's testimony, comparing the words that KR used in her testimony to the argument that defense counsel put forth. Accordingly, the prosecutor's comment did not deny defendant a fair trial.

Next, defendant argues that the prosecutor asserted facts not in evidence, specifically that there was no follow up to the doctor visit about the concern that a relative had abused KR. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241. Defense counsel referred, in closing, to a concern that KR had been abused by a cousin. In response, the prosecutor relied on McVannel's testimony that she did not believe that "cousin Kenny" had abused KR. Moreover, the reasonable implication from the record evidence was that those concerns were not pursued, including Deputy Frazee's testimony that he did not interview the cousin. The prosecutor's argument, in context, was a response to defense counsel's argument, and defendant has not demonstrated misconduct.

Finally, defendant argues that the cumulative effect of errors denied him a fair trial. "The cumulative effect of several minor errors may warrant reversal even where the individual errors in the case would not warrant reversal." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). Because defendant has not demonstrated prosecutorial error, there is no cumulative error to warrant reversal.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant additionally argues that he was denied the effective assistance of counsel. Defendant's right to counsel is guaranteed by the United States and Michigan Constitution. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance was deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant bears the heavy burden to show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667.

Defendant argues that defense counsel failed to object properly to the expert testimony and ensure that the written order about Dr. Vogel's testimony reflected that it was only admissible in rebuttal. Defense counsel, however, filed pretrial motions to preclude both Welke's and Dr. Vogel's testimonies. Defense counsel also unsuccessfully renewed the objections at trial before the witnesses testified. Further, the written order regarding the expert testimony did not require that the prosecutor only introduce Dr. Vogel's testimony in rebuttal, but that order was not improper. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Likewise, although defense counsel did not object to all of the prosecutor's challenged remarks, as discussed, the challenged remarks were proper references to, and argument from, the evidence. Therefore, defendant was not denied effective assistance of counsel.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates